GOVERNMENT OF THE VIRGIN ISLANDS

v.

EMERITO TORRES, Appellant

D.C. Crim. No. 132-1971

United States Court of Appeals

Third Circuit

Argued February 2, 1973

Filed April 4, 1973

EDWARD J. OCEAN, ESQ., Christiansted, St. Croix, V.I., *counsel for appellant*

JULIO A. BRADY, ESQ., Assistant United States Attorney, Christiansted, St. Croix, V.I., *counsel for appellee*

Before VAN DUSEN, ROSENN, and HUNTER, *Circuit Judges*

OPINION OF THE COURT

ROSENN, *Circuit Judge*

Emerito Torres appeals to this court from his judgment of conviction on March 16, 1972, for premeditated murder. He was tried to a jury in the District of the Virgin Islands and was sentenced to life imprisonment. His appeal raises a number of alleged trial errors, the most important of

which is the failure of the trial judge to decide as a matter of law that the Government's key witness was an accomplice to the crime. We find no error and affirm.

The body of Nelson DeFoe, the victim, bearing stab wounds in the head, neck, and chest, and multiple fractures of the scalp and face, was found on December 6, 1970, in a ravine close to his house. The Government's case depended primarily on the testimony of Basilio Felix. Felix testified that on the day of the murder, Saturday, December 5, 1970, he and a friend, Enrique Valasquez, met Torres and Marcial Santana. Torres offered them a ride into town in his black Volkswagen, and, on the way, at Torres' behest, the group decided to find a house to burglarize. They drove to DeFoe's, where Felix walked into the garage and took a radio. After carrying it to Torres' car, he and Torres went to the house. They approached an open glass door and saw DeFoe reclining inside. DeFoe asked what they wanted, and Torres replied that they were looking for some man. DeFoe then accompanied them to their car, where he saw his radio and demanded its return.

According to Felix, Torres said that he was going to kill DeFoe because the latter had seen their faces and the license number of the car. Felix testified that both he and Valasquez objected and refused to have any part in the murder. They retreated down the road about twenty feet from which point they observed Torres stab DeFoe several times in the neck and chest with an ice pick that had been in the car. DeFoe fell to the ground, and Santana took the jack out of Torres' car and hit the victim in the face and head.

Felix further testified that Torres and Santana pushed the body into the ravine at the side of the road. Although Felix suggested that they leave, Torres refused; and all four reentered the home and removed some jewelry, a television set, a gun, and a safe. They placed the goods in

DeFoe's car, and then drove both cars to a densely grown area where Torres opened the safe. They abandoned De-Foe's car and departed together in Torres' black Volks-wagen. In driving the Volkswagen from the DeFoe resi-dence, Valasquez had hit a tree and dislodged a fender. Be-cause the wheel was bent in this accident, the car eventually failed them at a point near Centerline Road. There they en-countered Juan Santos who at their request pushed them up to Estate Profit.

Felix testified that the group arrived at DeFoe's resi-dence between 12:00 P.M. and 1:00 P.M. and that, although he did not remember the exact time, they parted company when it was getting dark, approximately at some time be-tween 4:00 P.M. and 6:00 P.M. He also testified that they absconded with two watches from DeFoe's home. One of them was a round hook-on watch with a "painted gold" band which he described as follows:

Well the band, has, you know, from where the part of the watch joined, it had like two lines of iron made out of gold and then both sides, that is what you hook onto your wrist.

Another Government witness, Jose Felix, testified that he saw Torres with Santana in the black Volkswagen on the morning of December 5, 1970. He also saw Torres later that day driving with Santana in the Volkswagen, minus a fender. On December 10, 1970, Torres had shown him two watches that he said were stolen. One of the watches was gold with two wires, the type that slips over the wrist and has no clasp. Gilberta Cruz Rivera, who was present at the time of the meeting between Torres and Jose Felix, also saw the watches; he corroborated the latter's account of the event and description of the watches.

Doreen Jerz, Mrs. DeFoe's employer and a Govern-ment witness, testified that she knew the DeFoes personally, that DeFoe's body was found the day after the murder at the side of the road in front of the house, and that Mr.

DeFoe owned a thin, round watch with an unusual gold band. The band was a bracelet type that did not come together in the back. Two thin strips of gold, with a piece of scroll work between them, comprised the band.

Torres took the stand and testified that he was not acquainted with any of the Government witnesses and that on the day of the murder he was at home in Estate Profit. He said he worked from early in the morning until approximately 4:00 P.M., when he accompanied his father, Elias Torres, his mother-in-law, Juanito Acosto, a friend, Saulo Saldana, and Santana to the hospital, where Santana was treated for an overdose of drugs. Each of these persons corroborated Torres' story as to the hospital trip and placed the time of arrival at the hospital at some time between 4:00 P.M. and 5:00 P.M. and the time of departure at 9:00 P.M. to 10:00 P.M. They testified that Santana was unconscious when he arrived and that the attending physician immediately began to treat him. They said he was kept in the emergency room four to five hours and then admitted to the hospital. Elias Torres, Juanito Acosto, and two other witnesses, Nathaniel Carmona, who allegedly worked with Emerito Torres on the car, and Jose Olivo, a neighbor, verified the appellant's testimony about having been home all day.

Appellant then called Judith Margras, the medical librarian from the hospital where Santana was treated. She testified that Santana was treated for a drug overdose on December 5. On cross-examination she said the time of treatment noted by the attending physician was 10:00 P.M. and the time he was actually admitted to the hospital was 10:30 P.M. She testified that the records did not, however, show the actual time when the patient was brought into the emergency room. Appellant Torres endeavored to examine her further to prove that Santana was treated prior to 10:00 P.M. Specifically, he asked her to count the number

of patients the emergency room doctor treated on his shift after seeing Santana and prior to going off duty. The court refused to allow this. Although he did not explain specifically his purpose to the trial court, defense counsel now argues that he wanted to prove that doctors work eight-hour shifts and that the attending doctor began his shift at 4:00 P.M. and treated thirty-eight patients after Santana. He would then have argued that the doctor could not have treated Santana as late as 10:00 P.M. because he could not have seen thirty-eight patients in the period of an hour and one-half.

In rebuttal of Torres' testimony that he did not know Basilio Felix, the Government called Juan Santos, who testified that on a Saturday in December at about 2:30 P.M. he had seen Felix and Torres on the Centerline Road in a black Volkswagen. At the request of Felix and Torres he pushed the automobile up Centerline Road to Estate Profit. He said there were two other persons in the car but he could not identify them. He could not recall the precise date but testified that this was the only time he had ever done this.

The information charging Torres with the alleged crimes initially contained two counts. The first count charged appellant with premeditated murder in violation of 14 V.I.C. § 922(a)(1) and felony murder in violation of 14 V.I.C. § 922(a)(2); the second charged burglary in violation of 14 V.I.C. § 443.[1] At the conclusion of the evidence,

---

[1] The information read, in relevant part:

COUNT I

The United States Attorney charges:

On or about the 5th day of December, 1970, in the Virgin Islands of the United States, Judicial Division of St. Croix, Emerito Torres and Marcial Santana while acting together and in concert did, wilfully and unlawfully with malice aforethought and premeditation kill one Nelson DeFoe by stabbing him with an icepick and inflicting wounds about the head of Nelson DeFoe in furtherance of another crime, to wit: burglary in the second degree, in violation of Title 14 V.I.C., § 922(a)(1)(2).

COUNT II

On or about the 5th day of December, 1970, in the Virgin Islands of the

the court granted the Government's motion to amend the information by dismissing count two and by deleting reference in count I to section 922(a)(2). The Government asked for this amendment on the ground that it had failed to prove an essential element of count II, namely, that defendant entered the DeFoe residence. Defendant did not object to the amendment.

In accordance with the Virgin Islands statute providing that no conviction may be based upon the testimony of an "accomplice" unless corroborated by such other evidence as tends to connect the defendant to the crime, the court submitted to the jury the question whether Basilio Felix was an "accomplice."

On appeal, Torres claims the district court erred: (1) in submitting to the jury the question whether Basilio Felix was an accomplice; (2) in permitting the Government to amend the information at the conclusion of the evidence; (3) in limiting his examination of Judith Margras; and (4) in permitting the Government witnesses' testimony about the allegedly stolen watches.

The first and most substantial issue involves the treatment of Felix' possible status as an accomplice. 14 V.I.C. § 17 provides:

> No conviction can be had upon the testimony of an accomplice unless it be corroborated by such other evidence as tends to connect the defendant with the commission of the crime. The corroboration is not sufficient if it merely shows the commission of the crime or the circumstances of the commission.

An accomplice is generally a person who could have been charged with the same offense as the person he testifies

United States, Judicial Division of St. Croix, Emerito Torres and Marcial Santana, did, knowingly and unlawfully break and enter the dwelling of one Nelson DeFoe while said Nelson DeFoe was present therein with the intent to commit a crime, to wit: larceny, in violation of Title 14 V.I.C., § 443.

DATED: November 26, 1971

against, either as principal or accessory. United States v. Nolte, 440 F.2d 1124, 1126 (5th Cir. 1971); Phelps v. United States, 252 F.2d 49, 50 n. 3 (5th Cir. 1958). Although the Virgin Islands statute limits the use of testimony of an accomplice, it is silent as to whether the court or the jury has responsibility for determining if a given witness is an accomplice. Case law in other jurisdictions, however, indicates that when the facts are undisputed, the question is one of law for the court, and that when the facts are in dispute, the question is for the jury. See Annot., 19 A.L.R. 2d 1352. Moreover, the denial by a defendant of the commission of the crime is not deemed ipso facto to create a factual dispute.

In this case, it might be argued that the only reasonable inference from the undisputed evidence was that Felix was an "accomplice" within the meaning of the statute. Torres was charged with premeditated murder, felony murder, and burglary. Basilio Felix could arguably have been charged with felony murder, defined in 14 V.I.C. § 922(a)(2) as including murder committed in the perpetration of burglary. The Government's dismissal of the burglary charge against Torres due to an evidentiary failure at his trial would not preclude a similar charge or a murder charge against Basilio Felix. Moreover, the purpose of the accomplice statute would seem to suggest its application to the facts of this case. As pointed out in Government of the Virgin Islands v. Solis, 359 F.2d 518 (3d Cir. 1966), the statute was designed to provide a degree of protection against the well known danger that a participant in the indicted crime may seek to save himself by falsely incriminating a cohort. History is replete with accounts of such human frailties. See Phelps v. United States, 252 F.2d at 52. Because of Felix' admitted participation, at least in the burglary, that danger exists here.

■■ We need not, however, decide whether the accomplice issue was properly submitted to the jury or was a legal question for the court, since it becomes material only if there was no corroborative evidence tending to connect defendant with the crime.[2] Although insubstantial and inconclusive of guilt, the testimony of Jose Felix and Gilberta Cruz Rivera, combined with the testimony of Mrs. Jerz, was ample corroboration of the alleged accomplice and fulfills the statutory requirement, since it "tends to connect" Torres with the DeFoe crimes and corroborates Basilio Felix' testimony. The testimony of Juan Santos is also significantly corroborative within the meaning of the statute. This testimony was sufficient to allay the fear that Basilio Felix was fabricating Torres' alleged connection with the murder.

■ The district court did not abuse its discretion in permitting the amendment of the information at the close of the evidence. F.R.Cr.P. 7(e) authorizes an amendment at any time before verdict "if no additional or different offense is charged and if substantial rights of the defendant are not prejudiced." In this case, appellant had been charged with both premeditated murder and felony murder, and sections of the Virgin Islands Code enumerating each of these types of first degree murder were cited in the information. The amendment did not charge him with a different offense; rather, two of the three offenses with which he had been charged were dropped. Appellant was not prejudiced by the ruling.

■■ The trial court did not err in limiting appellant's examination of Margras, the medical librarian. The proof would have been very speculative for several reasons. In

---

[2] We also note that appellant did not request a specific ruling from the trial judge on this issue. It is well established that the court of appeals will not pass upon issues not raised in the court below unless the error be so fundamental in nature as to deprive the defendant of fundamental justice. See, e.g., United States v. Moore, 435 F.2d 601 (3d Cir. 1971).

the absence of proof of the number of persons normally treated between the hours in question, information as to how many patients the attending physician treated that night after Santana and prior to midnight would not fix the time at which Santana was treated. Appellant did not offer to prove the time at which the doctor in question arrived and departed on the day in question. In addition, proof that Santana was treated prior to 10:00 P.M. would be of negligible value, since the precise time could not be established. Moreover, proof that Santana's treatment was prior to 5:00 P.M. would not be inconsistent with appellant's participation in the crime as described by Basilio Felix. Balancing the probative value of the proposed evidence against the danger of confusing the jury and distracting them from the main issue is a matter for the discretion of the trial court. See, e.g., United States v. Bowe, 360 F.2d 1, 15 (2d Cir.), cert. denied, 385 U.S. 961 (1966); Rule 403, Proposed Rules of Evidence for United States Courts and Magistrates.

█ Nor did the court abuse its discretion in admitting the testimony pertaining to the watches. The testimony was relevant, any possible variation or imprecision in the descriptions being a matter for the jury. The descriptions were sufficiently similar to permit the jury to find that the watches described by the three other witnesses were one and the same as the watch described by Basilio Felix.

The judgment of the district court will be affirmed.