**UNITED STATES of America**

v.

**Anthony W. MASTRO.**

**Crim. No. 83–00143–01.**

United States District Court,
E.D. Pennsylvania.

Sept. 16, 1983.

Edward S.G. Dennis, Jr., U.S. Atty., Samuel M. Forstein, Asst. U.S. Atty., Philadelphia, Pa., for plaintiff.

John M. Gallagher, Richard, DiSanti, Hamilton, Gallagher & Paul, Media, Pa., for defendant.

## MEMORANDUM

RAYMOND J. BRODERICK, District Judge.

A jury has found the defendant, Anthony W. Mastro, guilty on count one of indictment 83–143, charging him with unlawful dealing in firearms, in violation of 18 U.S.C. § 922(a)(1), guilty on counts 3, 11, 13, 15, and 17, charging him with unlawful receipt of a firearm in violation of 18 U.S.C. § 922(a)(3), and guilty on counts 2 through 8, 12, 14, 16, and 18, charging him with knowingly making false statements in connection with the acquisition of firearms, in violation of 18 U.S.C. § 922(a)(6). The defendant was found not guilty on count ten, charging him with unlawful receipt. The charges arise out of the purchase between 1978 and 1982 of approximately three dozen firearms by the defendant, who was formerly the Chief of Police of Upper Chichester Township. These firearms were resold by Chief Mastro to members of his department, to officers affiliated with other law enforcement agencies, and, in several cases, to private citizens who had no connection with any law enforcement agency. All of the guns were ordered in a tax-exempt status upon Chief Mastro's representation that the guns were to be used by officers in his department in the performance of their official duties. Federal tax exemption certificates were also signed, or authorized to be signed, by Chief Mastro with respect to these purchases, certifying that the purchases were for the exclusive use of the Upper Chichester Township Police Department and were to remain the property of that agency.

Chief Mastro has moved for a judgment of acquittal pursuant to Rule 29 of the Federal Rules of Criminal Procedure or, in the alternative, for a new trial, pursuant to Rule 33, contending: (1) that the evidence does not show him to have been engaged in the business of dealing in firearms and the Court's instruction on this matter was in error; (2) that the transactions for which he was convicted were exempt from the requirements of federal law; (3) that the Court erred in not suppressing certain evidence; (4) that the Court erred in deciding the question of the materiality of the false statements as a matter of law; (5) that the Court erred in instructing the jury several times that defendant's ignorance of the law was not a defense to the crimes charged; and (6) that the Court erred in failing to instruct the jury that certain testimony was to be considered with great care because it was given by accomplices to the crimes. For the reasons which follow, the defendant's motion for a judgment of acquittal, or in the alternative for a new trial, will be denied.

On a motion for judgment of acquittal the Court must view the evidence in the light most favorable to the Government. *United States v. Pratt,* 429 F.2d 690 (3d Cir.1970). If there is sufficient evidence in the record upon which a rational jury could find beyond a reasonable doubt that the Government has proved all the elements of the offenses charged, a motion for judgment of acquittal may not be granted. *Id.;- United States v. Doan,* 710 F.2d 124, 126–27 (3d Cir.1983). On the other hand, a motion for a new trial on the ground that the verdict is against the weight of the evidence is directed to the sound discretion of the trial court, which may weigh the evidence but may set aside a verdict and grant a new trial only if it determines that the verdict constitutes a miscarriage of justice. *United States v. Phifer,* 400 F.Supp. 719, 723 (E.D.Pa.1975), *aff'd* 532 F.2d 748 (3d Cir.1976). The Court must also grant a new trial if there is a reasonable possibility that trial error could have had a substantial influence on the jury's decision. *See Government of the Virgin Islands v. Bedford,* 671 F.2d 758, 762 (3d Cir.1982). In the present case, the evidence was sufficient to support the jury's verdict under both the

Rule 29 standard and the Rule 33 standard, and the defendant's assignments of error are without merit.

### Defendant's Engagement in the Business of Dealing in Firearms

■ The defendant contends that sufficient evidence did not support the jury's finding that he was engaged in the business of dealing in firearms, because there was no showing that he made or expected to make a profit from the transactions. The defendant also contends that it was error for the Court to refuse to charge the jury that the offense of unlawful dealing in firearms requires a showing that the defendant engaged in firearms dealing for the purpose of livelihood or profit. The Court instructed the jury that the existence or absence of a profit motive could be considered by the jury in determining whether the defendant was engaged in the business of dealing in firearms, but that the Government was not required to prove the existence of a profit or profit motive. The jury was instructed that in order to find the defendant guilty on the dealing count they must find that his procurement and sales activity was carried on over a period of time, and not merely on a few isolated occasions, and that he had firearms on hand, or was ready and able to procure them, for the purpose of selling them to such persons as he might from time to time accept as customers. The Court's charge in this respect followed the weight of recent authority, which holds that the existence or absence of a profit motive is a factor to be considered by the jury, but that the Government need not show that the defendant made or expected to make a profit. *United States v. Wilmoth,* 636 F.2d 123 (5th Cir.1981); *United States v. Shirling,* 572 F.2d 532 (5th Cir.1978) (explicitly rejecting the contention put forward by defendant here); *United States v. Hamilton,* 689 F.2d 1262, 1272 (6th Cir.1983), *cert. denied,* —— U.S. ——, 103 S.Ct. 753, 74 L.Ed.2d 971 (1983); *United States v. Jackson,* 352 F.Supp. 672, 674 (S.D.Ohio 1972), *aff'd* 480 F.2d 927 (6th Cir.1973); *United States v. Angelini,* 607 F.2d 1305, 1309 (9th Cir.1979); *See United States v. Masters,* 622

F.2d 83, 88 (4th Cir.1980) (Government may satisfy burden by showing defendant able to procure guns and sell them to chosen customers, citing *Shirling*); *United States v. Tarr,* 589 F.2d 55, 59 (1st Cir.1978) (dealing connotes a regular course of conduct carried on over a period of time). This interpretation supports the purposes of the federal firearms laws, as the harm from unlicensed dealing exists whether or not the defendant profits from his sales.

The evidence at trial was amply sufficient to show that the defendant was engaged in the business of dealing in firearms. He made numerous sales over a period of some years to a variety of persons whom he chose to accept as customers. He was known as a source of firearms, and sought out by purchasers for that reason. Finally, there was evidence that the defendant in fact made a profit on several of the sales involved, and used some of this profit to improve the Township's rifle range.

### Exemption of Defendant's Transactions from the Federal Firearms Laws

■ The defendant contends that all of the firearms which he purchased were exempt from the Federal Firearms Control Act (the Act) because they were shipped to the Upper Chichester Police Department, and that, in any event, those guns purchased for the use of law enforcement officers are exempt from the Act. The defendant contends that this exemption applies to the making of false statements in connection with the acquisition of the guns, as well as to the receipt and sale of the guns. In advancing this argument, the defendant relies on the exemption set forth in 18 U.S.C. § 925(a)(1), as well as an interpretation of this statute by the Bureau of Alcohol, Tobacco, and Firearms (ATF). Section 925(a)(1) provides that the provisions of the Act, including those sections which the defendant has been convicted of violating

> shall not apply with respect to the transportation, shipment, receipt, or importation of any firearm or ammunition imported for, sold or shipped to, or issued for the use of, the United States or any department or agency thereof or any

State or any department, agency, or political subdivision thereof.

As the Court charged the jury, this statute exempts only the "transportation, shipment, receipt or importation" of firearms "sold or shipped to or issued for the use of . . . any state or any department, agency, or political subdivision thereof." The statute does not purport to exempt the making of false material statements in connection with the sales of firearms shipped to political subdivisions. *See United States v. Brooks,* 611 F.2d 614, 617 (5th Cir.1980). The Court cannot ascribe to Congress the intent to allow firearms purchasers to lie about their purchases so long as the gun is shipped to a state, agency, or political subdivision and can find no support for such an intent in § 925(a)(1).

The defendant also relies on the interpretation of § 925(a)(1) given by the ATF in its booklet entitled *Federal Regulation of Firearms and Ammunition,* which was introduced as defendant's exhibit 1. (DX–1). As the defendant asserts, under this interpretation certain sales of firearms to individual police officers are exempt from the requirements of the Act. (DX–1 at 8, 14). The ATF publication specifically states, however, that the exemption of § 925(a)(1) applies only to firearms used for the official business of the agency, and requires that the individual officer submit a signed certification from the authorized official for the agency for which he works stating that the firearm is to be used in the officer's official duties. *Id.; Brooks,* 611 F.2d at 618. *See* 27 C.F.R. § 178.146; *United States v. Kozerski,* 518 F.Supp. 1082 (D.N.H.1981) (firearms must be owned by and used exclusively for the state, agency, or political subdivision).

The jurors were instructed on both exemptions as set forth above, and told that in considering the charges of unlawful dealing and unlawful receipt, they were to find the defendant not guilty if they found, with respect to a given count, that the firearm in that count was sold, shipped to, or issued for the official use of a state, agency, or political subdivision, or met the requirements for the exemption as set forth in the ATF interpretation. The jury was also instructed that no exemption existed for the making of false material statements in connection with the acquisition of a firearm.

■ The evidence at trial was sufficient to support the finding by the jury that the acts for which the defendant was convicted were not subject to any exemption from the federal firearms laws. Although the defendant obtained the firearms described in the indictment by giving written statements to dealers that the guns were to be used by full-time on-duty police officers, and executed tax-exemption certificates in which he certified that the weapons were purchased for the exclusive use of the Upper Chichester Township Police Department and would remain the property of the Department, the evidence showed that the guns were sold by the defendant to members of his department and other departments for personal, off-duty use, and to private citizens who had no connection with the Township or with any law enforcement agency. Several officers testified that they used these personal weapons to assist in police work while off-duty; however, the evidence showed that the guns were owned by these officers and not by the Township, were registered to the officers and not to the Township, and were used either sporadically by the officers or not at all. Each of the officers involved had a standard on-duty official weapon issued and owned by the department for which he worked; the firearms at issue in this case were not such weapons. In addition, the defendant sold several guns to private citizens and had several weapons stored in his office unsold and unissued. The jury could easily have found on this evidence that the guns were not shipped to or issued for the use of a governmental agency, but rather were shipped to the defendant for resale to private citizens and to law enforcement officers for their own personal use.

The evidence also does not support the claim by the defendant to an exemption under the interpretation of § 925(a)(1) promulgated by the ATF, as this interpretation

specifically states that the firearms must be used by an officer in the performance of his official duties, and requires that a certification to this effect be made by an authorizing official within the agency for which the purchaser of the firearm works.

For the above reasons, the Court holds that the jury was correctly charged on the scope of the exemptions upon which the defendant relied, and that the evidence supported the jury's finding that the defendant's acts were not exempt from the requirements of federal law.

*Motion to Suppress Evidence*

The defendant renews his contention, advanced before trial, that certain statements made by the defendant to ATF agents and certain information supplied the agents by the defendant should not have been admissible against him because obtained involuntarily, by deception and improper influence, in violation of his Fifth and Sixth Amendment rights. The defendant claims that, because of certain statements by the agents to him, to his lawyer, and to the Upper Chichester Police Commissioner, he was given the impression that the Government was not investigating him personally and did not intend to indict him. The Court held an evidentiary hearing on the defendant's suppression motion before trial, and denied the motion for the reasons set forth below.

■ As this Court recently stated in *United States v. Sibley,* 535 F.Supp. 208, 210 (E.D.Pa.), *aff'd,* 692 F.2d 750 (3d Cir. 1982):

It is well settled that in testing the voluntariness of a statement, the Court must determine whether the government's behavior was such as to overbear the defendant's will to resist and therefore bring about a statement not freely self-determined. *Rogers v. Richmond,* 365 U.S. 534, 544, 81 S.Ct. 735, 741 [5 L.Ed.2d 760] (1961); *United States v. Pomares,* 499 F.2d 1220, 1222 (2d Cir.1974). In making such a determination, the Court must consider the entire set of circumstances resulting in the inculpatory statement. *See Beckwith v. United States,* 425 U.S. 341, 347–48, 96 S.Ct. 1612, 1616–

17 [48 L.Ed.2d 1] (1976); *Brady v. United States,* 397 U.S. 742, 749, 90 S.Ct. 1463, 1469 [25 L.Ed.2d 747] (1970).

The prosecution must prove the voluntariness of a challenged confession by a preponderance of the evidence. *Lego v. Twomey,* 404 U.S. 477, 489, 92 S.Ct. 619, 627, 30 L.Ed.2d 618 (1972). Where, as here and as in *Sibley,* both sides agree that the challenged statements were not made in custody, so that no *Miranda* issue is presented,

the only question to be decided by the Court is whether the government's conduct reasonably induced the defendant to believe that in the event he gave a full and complete statement he would not be prosecuted. In other words, provided the circumstances herein presented [the defendant] with a *reasonable* basis for believing that in the event he gave a statement he would not be prosecuted, then his statements can be found involuntary and should be suppressed.

535 F.Supp. at 210 (emphasis in original).

■ Based upon Chief Mastro's affidavit and upon the testimony at the hearing, including that of Chief Mastro, the Court has determined that the totality of the circumstances surrounding his statements show the statements to have been given voluntarily, without the inducement of any promise that he would not be prosecuted if he cooperated. The circumstances under which the statements were made give no indication that Chief Mastro's will was overborne in any way by the Government, either by inducement or by coercion.

The defendant had three meetings with ATF agents. The first, on June 30, 1982, was at his office with agents Slamon and Lory, along with Police Commissioner Fecondo. The defendant was informed of the meeting by Commissioner Fecondo; the agents were not expecting him to be there. The Chief was questioned about a gun registered to the Township which had been found at a Delaware massage parlor, and about other weapons he had purchased. Chief Mastro testified that he asked the agents if he was in any trouble, and was

told that no indictment was being sought against him, but that the agents were, at that time, primarily interested in locating and identifying the guns connected with the Police Department. A second meeting with the two agents at Chief Mastro's home was held at his request. At this meeting, he provided the agents some records of firearms transactions. The final meeting was October 29, 1982, at the office of James McHugh, Esq., an attorney who had been advising the defendant during the course of the investigation. Chief Mastro, Mr. McHugh and Agents Slamon and Lory were present, along with a third agent, Brashears. Defendant testified that at the time of this meeting he was still under the impression that he had not acted illegally in any way, and that the only purpose of the ATF investigation was to obtain proper registration information concerning firearms.

Although the defendant stated that he was given the impression that no charges were to be brought against him and that ATF was merely concerned with obtaining proper registration information, and although Commissioner Fecondo testified that the agents "insinuated" that no charges would be brought, both men testified that, in fact, no promise was ever made by any of the agents concerning the bringing or dropping of any charges against Chief Mastro. Nor did either Chief Mastro or Commissioner Fecondo testify that any of the agents stated or indicated that a decision had been made or would be made not to prosecute the defendant based upon his cooperation or his failure to cooperate. All three agents testified that they made no promises to the defendant concerning his status or the status of the investigation, and that the subject of indictment or prosecution never even came up at any of their meetings with the defendant. This testimony was supported by that of Mr. McHugh, who stated quite definitely that the subject of immunity or of indictment was never discussed in his presence, and that, so far as he knew, defendant had neither asked for any promises nor received any.

Attorney McHugh further testified that at the time he was advising the defendant he was unaware that there was any possibility that Chief Mastro was subject to prosecution, and that all of his dealings with the agents were marked by a "spirit of cooperation". There is no indication that this cooperation was the result of any inducements by the agents, or any promises made by them that the cooperation would result in defendant's not being prosecuted for the firearms violations uncovered. Mr. McHugh testified in addition that one of the agents told him about a police official in a neighboring community who had been involved in a similar investigation and whose case was ultimately disposed of by preindictment administrative probation. However, Mr. McHugh testified that this discussion was part of a general discussion, and was not in any way a promise or even an indication that the defendant would receive a similar disposition. Mr. McHugh also testified quite definitely that he was aware of no agreement concerning the disposition of any charges which might be brought against the defendant. This testimony was consistent with that of Agent Lory, the agent who reputedly broached the subject of the charges against the other police official.

The defendant also offered the testimony of two Upper Chichester police officers who stated that Agent Slamon had referred to the investigation of the defendant as an unimportant one involving technicalities. The officers stated that they relayed this conversation to Chief Mastro. They did not state that the remarks, denied by Agent Slamon, were intended as an inducement to the Chief's cooperation, or that they were in fact considered as such by him.

The Court finds that the above testimony fulfills the Government's burden of proving by a preponderance of the evidence that the defendant's statements were made voluntarily without improper inducement or coercion. Chief Mastro, an experienced law enforcement official receiving the advice of counsel at all times, cooperated willingly with the investigation. No promises of im-

munity were made to him at any time; nor is there any evidence that any of the agents ever sought to give him the impression that his cooperation would insure that he not be prosecuted, or decrease the likelihood of his prosecution. While Chief Mastro may have had the impression that he would not be prosecuted, this Court cannot say from the totality of the circumstances as presented at the hearing and in the defendant's affidavit that any conduct of the Government gave him any reasonable basis for such a belief. *See United States v. Mannino*, 551 F.Supp. 13 (S.D.N.Y.1982) (no suppression where agents told defendant he was not a target, but did not say he would not be indicted in the future; no misstatement, trickery, or deception found).

Finally, the defendant's reliance upon *Bram v. United States*, 168 U.S. 532, 18 S.Ct. 183, 42 L.Ed. 568 (1897), is misplaced. *Bram* stated that a confession is involuntary if "obtained by any direct or implied promise, however slight." In the present case the Court has found that no direct or implied promise not to prosecute the defendant if he cooperated was ever made. Moreover, *Bram* has not been applied to invalidate confessions which are found voluntary under all the circumstances of the case, even though those circumstances include, at some point, a slight inducement. *See United States v. Reynolds*, 532 F.2d 1150, 1158–60 (7th Cir.1976); *United States v. Ferrara*, 377 F.2d 16, 17 (2d Cir.), *cert. denied*, 389 U.S. 908, 88 S.Ct. 225, 19 L.Ed.2d 225 (1967); *United States v. Sibley*, 535 F.Supp. at 211–12. As stated above, the Court has found, based on a totality of the circumstances, that the statements of the defendant were voluntary. The Court also notes that there is a serious question as to whether the rule of *Bram* applies to non-custodial questioning, such as that in this case, particularly when the defendant is represented by counsel. *See Brady v. United States*, 397 U.S. 742, 754, 90 S.Ct. 1463, 1472, 25 L.Ed.2d 747 (1970).

*Materiality as a Question of Law*

■ The defendant contends that the question of the materiality of his false statements to the lawfulness of the sales should have been given the jury rather than determined as a matter of law by the Court. Although the Court has discovered no Third Circuit case addressing this point, the Sixth Circuit has approved an instruction that the Court had determined a false statement made in connection with the acquisition of a firearm to be material, *United States v. Thomas*, 484 F.2d 909, 914, *cert. denied*, 414 U.S. 912, 94 S.Ct. 253, 38 L.Ed.2d 151 (1973), and the Fifth Circuit pattern instructions state that the question is one of law for the Court. Committee on Pattern Jury Instructions (Criminal Cases) at 91 (West 1979). The Third Circuit has held that the materiality of perjurious statements or of false statements made to a grand jury is a question of law for the Court, *United States v. Crocker*, 568 F.2d 1049, 1056 (1977); the materiality of false statements to the lawfulness of a firearms transaction presents a closely analogous situation which should be treated in the same manner. The Court also notes that a number of Circuits have held that the materiality of false or fraudulent statements to an agency of the United States in cases under 18 U.S.C. § 1001 is a question of law for the Court. *United States v. McIntosh*, 655 F.2d 80 (5th Cir. 1981), *cert. denied*, 455 U.S. 948, 102 S.Ct. 1450, 71 L.Ed.2d 662 (1982); *United States v. Adler*, 623 F.2d 1287 (8th Cir.1980); *United States v. Bernard*, 384 F.2d 915 (2d Cir. 1967); *Weinstock v. United States*, 231 F.2d 699, 703 (D.C.Cir.1956); *But see United States v. Valdez*, 594 F.2d 725, 729 (9th Cir.1979). In considering false statements under 18 U.S.C. § 922(a)(6), there is no factual question as to the tendency of the statements to induce action or reliance, as in the securities fraud cases cited by the defendant, but rather only a legal question as to the materiality of the false statements to the lawfulness of the sale. It therefore appears that considering materiality to be a question of law for the Court rather than one of fact for the jury represents the better view.

The Court had no difficulty in concluding that the defendant's false statements were material to the lawfulness of the sales. By

certifying that the guns were official departmental purchases rather than purchases for personal use, the defendant was able to receive guns from out of state which he would not otherwise have been able to receive, and was able to avoid payment of the federal excise tax and applicable state taxes.

*Ignorance of the Law*

■ The defendant contends that the Court erred in "repeatedly" instructing the jury that ignorance of the law was not a defense to any of the crimes with which he was charged. Each of the three types of violation with which the defendant was charged requires that the defendant act "knowingly". With respect to each statute the Court instructed the jury that the "knowingly" language required the Government to show that the defendant knowingly engaged in the acts or conduct constituting the offense, but did not require the Government to show that the defendant knew he was violating federal firearms laws. The Court's instruction on ignorance of the law was essential to the jury's understanding of the knowledge requirement and could not have unfairly prejudiced the defendant. Moreover, there is no question that the Court's statement of the law was correct. *United States v. Williams,* 685 F.2d 319, 321 (9th Cir.1982); *United States v. Currier,* 621 F.2d 7 (1st Cir.1980); *United States v. Cochran,* 546 F.2d 27 (5th Cir.1977); *United States v. Cornett,* 484 F.2d 1365, 1367–68 (6th Cir.1973). *See United States v. Freed,* 401 U.S. 601, 607–10, 91 S.Ct. 1112, 1117–18, 28 L.Ed.2d 356 (1971); *United States v. Graves,* 554 F.2d 65 (3d Cir.1977) (en banc) (§ 922 "essentially regulatory as contrasted with being strictly criminal in nature;" affirms where *Cornett* relied upon below).

The defendant contends that his ignorance of the law should have been considered by the jury because he was misled by a firearms dealer as to the requirements of the law. A similar argument was rejected in *Williams,* 685 F.2d at 321, the Court holding that knowledge of the law was not required although the defendant claimed he had been misled by his parole officer as to the legality of his actions. This Court agrees with the *Williams* reasoning, as we do not feel that the purposes of the federal firearms laws would be served by rewriting them in accordance with the misstatements of firearms dealers or others.

*Accomplice Instruction*

■ The defendant contends that the Court should have instructed the jury that Gene Thompson and William Gregg, two of the Government's witnesses, were accomplices to the crimes for which the defendant was charged, and that the jury should have been instructed to consider their testimony with caution. "An accomplice is generally a person who could have been charged with the same offense as the person he testifies against, either as principal or as accessory." *Government of the Virgin Islands v. Torres,* 476 F.2d 486, 490 (3d Cir.1973). An accomplice can also be defined as "one who unites with a person in the commission of a crime, voluntarily and with common intent." *United States v. Hinds,* 662 F.2d 362, 370 n. 18 (5th Cir.1981), *cert. denied,* 455 U.S. 1022, 102 S.Ct. 1720, 72 L.Ed.2d 140 (1982) (quoting 1 Devitt and Blackmar, Federal Jury Practice and Instructions § 17.06 (3d ed. 1977)). In the present case, there was not sufficient evidence to support a finding by either the Court or the jury that Thompson and Gregg united with the defendant, with common intent, in the commission of the crimes charged. Neither Thompson nor Gregg was charged as an accomplice, and there was no evidence that the Government considered either as such, or that either was under any threat of prosecution or penalty should he not testify in the Government's favor. Under such circumstances, an accomplice instruction would have been inappropriate. Even were these witnesses able to be considered as accomplices, the instruction would have been unnecessary as their testimony was corroborated and the evidence was more than sufficient, even without their testimony, to support the jury's finding of guilt beyond a reasonable doubt. *See Hinds,* 662 F.2d at 371, *United States v. Wright,* 573 F.2d 681, 685 (1st Cir.), *cert. denied,* 436 U.S. 949, 98 S.Ct. 2857, 56

L.Ed.2d 792 (1978); *United States v. Waldron,* 568 F.2d 185, 187 (10th Cir.1977), *cert. denied,* 434 U.S. 1080, 98 S.Ct. 1276, 55 L.Ed.2d 788 (1978). *See also Torres,* 476 F.2d at 490. The defendant was permitted to argue to the jury that Thompson and Gregg had a motive to lie to the jury, and the jury was free to give the testimony of these two witnesses as much or as little weight as it desired.

For all of the above reasons, the defendant's motion for a judgment of acquittal, or in the alternative for a new trial, will be denied. An appropriate order follows.