**UNITED STATES of America**

v.

**David A. GOODMAN.**

**Crim. No. 85–00105.**

United States District Court,
M.D. Pennsylvania.

Sept. 17, 1985.

**324**

Timothy E. Haney, Asst. U.S. Atty., Harrisburg, Pa., for plaintiff.

Rochelle Friedman, Pittsburgh, Pa., for defendant.

## MEMORANDUM AND ORDER

NEALON, Chief Judge.

Defendant Goodman was indicted for willfully and knowingly conspiring and agreeing with others to commit violations of 18 U.S.C. § 922(*l*)[1] and 18 U.S.C. § (2) by importing and bringing into the United States twenty-four (24) West German Walther semi-automatic pistols without the authorization of the Secretary of the Treasury as provided by 18 U.S.C. § 925(d)[2].

Defendant has moved to dismiss or, in the alternative, to quash the indictment, *see* Documents 48 and 55 of the Record, arguing that 18 U.S.C. § 925(a)(1) exempts the transaction; that he is the subject of selective prosecution; and the transference of evidence from one grand jury to another was improper. The Government by brief dated August 30, 1985 has opposed the motion. For the reasons set forth below, the Motion to Dismiss or, in the Alternative, to Quash the Indictment will be denied.

The court finds unpersuasive the theory that 18 U.S.C. § 925(a)(1)[3] exempts defendant's transaction(s). Defendant argues that § 925(a)(1) as written exempts the transaction because the firearms were shipped to a political subdivision, *i.e.*, the Archbald Police Department. It is his contention that all such importations are exempt and that only those firearms that were "issued for the use of" any political subdivision, such as Archbald, would not be exempt under the facts presented in this case. He would confine, consequently, nonexempt status to an issuance, as distinguished from a shipment, receipt or importation. Congress could not have extended such an interpretation. While the defendant argues there is no support in case law that defendant has committed a crime, the

---

1. This section provides, as follows:

   Except as provided in section 925(d) of this chapter, it shall be unlawful for any person knowingly to import or bring into the United States or any possession thereof any firearm or ammunition; and it shall be unlawful for any person knowingly to receive any firearm or ammunition which has been imported or brought into the United States or any possession thereof in violation of the provisions of this chapter.

2. Section 925(d) allows for importation where specifically authorized by the Secretary of the Treasury.

3. This section states that:

   The provisions of this chapter shall not apply with respect to the transportation, shipment, receipt, or importation of any firearm or ammunition imported for, sold or shipped to, or issued for the use of, the United States or any department or agency thereof or any State or any department, agency, or political subdivision thereof.

court finds ample support that § 925(a)(1) is not to be so narrowly construed. *See e.g., Perri v. Department of Treasury,* 637 F.2d 1332, 1337 (9th Cir.1981) (Congress never intended that the Act could be circumvented where there was a willful violation simply because the government ultimately received the firearm.); *United States v. Brooks,* 611 F.2d 614, 617 (5th Cir.1980) *overruled on other grounds, United States v. Henry,* 749 F.2d 203 (5th Cir.1984) (This exemption "expressly covers only the 'transportation, shipment, receipt, or importation'" of firearms "for the use of the United States."); *Hyland v. Fukuda,* 580 F.2d 977, 979 (9th Cir.1978) (§ 925(a)(1) exempts firearms owned by the state and used exclusively for its purposes). In *United States v. Mastro,* 570 F.Supp. 1388 (E.D.Pa.1983), the court specifically held that the exemption would not exonerate a defendant where the evidence established "that the guns were not shipped to or issued for the use of a governmental agency...." *Id.* at 1392. "The Court cannot ascribe to Congress the intent to allow firearm purchasers to lie about their purchases so long as the gun is shipped to a state, agency, or political subdivision and can find no support for such an intent in § 925(a)(1)." *Id.*

While distinguishing the cases the Government has cited, defendant cites no support for his interpretation of the exemption. Defendant has been indicted in Count 2 with causing the importation without authorization by the Secretary in violation of the Act and charged as a principal under 18 U.S.C. § 2. If defendant caused the importation by members of the Archbald Police Department without the authorization, then the Act has been violated. The exemption of § 925(a)(1) would exclude importation *for the use of* a political subdivision of any state. The Government has represented that defendant arranged for the importation with other accomplices from the Archbald Police Department and paid for the pistols knowing that they were not *for the use of* the Police Department. Such conduct would not come under the protection of the exemption.

■ Similarly, the court rejects defendant's argument of selective prosecution. *See Wayte v. United States,* —— U.S. ——, 105 S.Ct. 1524, 84 L.Ed.2d 547 (1985). Defendant attaches copies of "The Shotgun News", a trade publication which lists advertisements by various individuals selling West German Walther semi-automatic pistols. Because none of these individuals have been prosecuted, defendant alleges he is a victim of selective prosecution. The court rejects this argument. *See Wayte, supra.* In *Wayte,* the Supreme Court stated that it was appropriate to judge selective prosecution claims according to ordinary equal protection standards. These standards require that a defendant show that the enforcement system had a discriminatory effect and that it was motivated by a discriminatory purpose. *Id.* at 1531.

Defendant's selective prosecution theory rests upon his argument that the instant prosecution is in retaliation for the civil suit filed by defendant against the Attorney General of the Commonwealth. The Government has stated, and defendant has not disputed, that the federal prosecutor responsible for the instant case was not aware that defendant had filed a civil suit until after the indictment was returned. Moreover, defendant's allegations are too vague and imprecise to warrant a hearing or further inquiry by the court.

■ Defendant's final argument is that the transference of evidence in this case from one grand jury to another without return to defendant where there is a hiatus between the two grand juries is improper is equally without merit. First, evidence may be transferred from one grand jury to a successive grand jury. *United States v. Slawik,* 408 F.Supp. 190, 210–11 (D.Del.1976), *aff'd* 564 F.2d 90 (3d Cir. 1977). Second, defendant argues that there was long hiatus between the first and second grand juries while in the next breath, he accuses this court of refusing disclosure of that very information. The court will not sift through the barrage of motions filed by defendant to establish ex-

actly where defendant requested this information and this court allegedly refused disclosure. This is clearly information to which defendant is entitled. The court will direct the Assistant United States Attorney to provide an affidavit(s) to defendant setting forth the term dates of those grand juries to which documentation submitted by Defendant Goodman was presented.

An appropriate Order will enter.