**UNITED STATES of America**

v.

**Joseph LORE, Giacomo Guagliardo, Kenneth Britt.**

**No. CRIM. 96–359.**

United States District Court, D. New Jersey.

April 24, 1998.

---

Faith S. Hochberg, U.S. Attorney by Ron Wigler, Asst. U.S. Atty., Newark, NJ, for U.S.

Jay Goldberg, New York, NY, Lawrence Bronson, Bronson & Leemon, LLP, New York, NY, for Joseph Lore.

Thomas J. Cammarata, Boffa, Shaljian, Cammarata & O'Connor, L.L.C., Jersey City, NJ, for Giacomo Guagliardo.

John L. Call, Jr., Call & Covert, Mount Holly, NJ, for Kenneth Britt.

## OPINION

RODRIGUEZ, District Judge.

This matter is before the court on the motions of defendants Joseph Lore, Giacomo Guagliardo and Kenneth Britt for judgment of acquittal pursuant to Rule 29 of the Federal Rules of Criminal Procedure. After considering the submissions of the parties, and for the reasons set forth below, the Court grants the motions as to Counts V and VI, and grants the motions as to Count VII in part.

## BACKGROUND

This case arises out of the illegal activities of Giacomo "Jake" Guagliardo, Joseph Lore, and Kenneth Britt, all of whom played different parts in a loansharking ring from the late 1980's through the early 1990's. Guagliardo was the lending agent, conducting business at Grace's Luncheonette in Bayonne, New Jersey. Lore's role in the organization was its financial backer, and the person from whom Guagliardo sought approval for the loans he brokered. Britt served as Guagliardo and Lore's collection agent.

The activities charged in the Indictment began in August, 1987 when John Antos, a construction worker, received a $3,500 loan from Guagliardo at Grace's Luncheonette. Antos planned to use the money to support a tree-trimming business that he owned and operated. For this loan, he was required to make weekly interest payments ("vigorish" or "vig") equivalent to 3% of the principal loan. Antos met these interest payments, paid off the principal within a year, and then took out a second loan from Guagliardo in October of 1988 in the amount of $5,500. After several months, however, Antos became delinquent in his interest payments causing Guagliardo and Lore to make several unannounced Sunday morning visits to his home to demand payment. While he tried to meet his obligations, he kept falling short. As a result, the truck that Antos purchased with the proceeds of the loan was set afire in April of 1990, and he was physically beaten by three or four unidentified men on May 11, 1990.[1] At this point, Antos contacted law

---

1. At trial, there was no direct evidence presented that connected these acts with the defendants,

enforcement authorities. Undercover detective Dennis Vecchiarelli stepped in to assume Antos' payments and to investigate defendants' criminal activity.

Through Antos, Vecchiarelli (posing as a part-time carpenter named Dennis Vallardi) began to forge a relationship with Guagliardo at Grace's Luncheonette. Vecchiarelli's many conversations with Guagliardo were electronically recorded. After fully repaying Antos' outstanding loan and its vigorish, Vecciarelli received his own loan from Guagliardo in the amount of $2,000. He was given the money by defendant Britt,[2] who explained the weekly repayment terms of the loan interest, suggesting that "problems" might arise if Vecchiarelli were to become delinquent.[3] Vecchiarelli repaid the entire principal after a few months of timely interest payments. The investigation began to reveal that defendant Lore was the financial backer of these loans, and Guagliardo's superior. On March 28, 1991, Vecchiarelli asked for another loan, this time for the amount of $6,000. Guagliardo gave him the money on April 11, 1991. Vecchiarelli repaid this loan by May 23, 1991. A month later, on June 27, 1991, Vecchiarelli asked Guagliardo for a third loan of $4,000. Since Guagliardo was going to be out of town, he referred Vecchiarelli to a third party who provided him with the money.[4]

On July 8, 1991, Vecchiarelli asked Guagliardo for another loan of $3,000, and also asked to renegotiate a lower vigorish than the 3% he had been paying. Guagliardo agreed to offer Vecchiarelli an interest rate of 2 1/2% for both the $4,000 and $3,000 outstanding loans. The loans were repaid by September 3, 1991. The payments were made regularly and without incident. Later that month, Vecchiarelli asked Guagliardo for a much larger loan of $20,000. Guagliardo considered Vecchiarelli a "good payer" and attempted to secure the loan from Lore. The loan was never extended because Vecchiarelli sensed that Lore was beginning to get suspicious of him, and suspended the investigation.

A criminal indictment was returned in June of 1996, charging the defendants with loansharking activity from 1987 through 1991. Specifically, the indictment contained counts for conspiracy to make extortionate extensions of credit in violation of 18 U.S.C. § 892 (Count I: Antos' two loans and Vecchiarelli's four loans); conspiracy to collect extensions of credit by extortionate means in violation of 18 U.S.C. § 894 (Count II: Antos' two loans and Vecchiarelli's four loans); making an extortionate extension of credit in violation of 18 U.S.C. § 892 (Count III: Vecchiarelli's third loan of $3,000; and Count IV:

---

although when Antos told Guagliardo about the truck burning incident, he told him: "These guys (inaudible) like I said, they might have had something to do with it. You don't show no respect, you know. If you came to me and tell me what's happening, I could have told him but who sees you to tell them anything." Tr. of May 16, 1990.

As to the beating Antos received, there was no direct identification, but Antos did state that he was making a phone call from a public telephone booth when he was assaulted by two unidentified individuals and defendant Britt. Antos testified:

Because they were coming across to me, the two people came and they were standing, as I was hanging up the phone, they were standing to me, I was on the, hanging the phone up this way, they would be standing to my right and Kenny Britt was coming across the street. When he got up the sidewalk, he said Jake wants his money, and with that one of the persons turned around and sucker punched me.

\* \* \* \* \* \*

I just went down an covered my head up and he continue to hit me and kick me.

Trial Tr., May 27, 1997, at 100–01. *See also* Trial Tr., May 29, 1997, at 28, 36–38, 42, 55; Trial Tr., June 2, 1997, at 96–98; Trial Tr., June 4, 1997, at 85–90.

**2.** Britt stands nearly six and one-half feet tall and weighs approximately four-hundred pounds.

**3.** Specifically, Britt stated to Vecchiarelli:

KB: Don't want no problems with you. You get the fucking money just like you get it. You got to bring it back every fucking week. Because if you don't come and get it…if you don't bring it to us. I'll come and get it. I'll come a look for it.

DV: Don't worry about it.

KB: And once I come looking for it, you'll have fucking problems.

Tr. of Jan. 31, 1991. This was the only time Britt's voice appears on tape.

**4.** The third party, Nick Riccio, was not indicted.

Vecchiarelli's fourth loan of $4,000); and collecting an extension of credit by extortionate means in violation 18 U.S.C. § 894 (Count V: Vecchiarelli's third loan of $4,000; Count VI: Vecchiarelli's fourth loan of $3,000; and Count VII: Antos' second loan of $5,500). A jury trial began on May 19, 1997. At the close of the government's case and again after the defense rested, all defendants moved for a judgment of acquittal pursuant to Fed.R.Crim.P. 29, alleging insufficiency of the evidence. The Court reserved ruling on these motions. On June 18, 1997, the jury returned verdicts of guilty against defendants Lore, Guagliardo and Britt on all counts.

## DISCUSSION

Defendants' Rule 29 motion is based on, among other things, the charges under 18 U.S.C. § 894 for the use of extortionate means in the collection of a loan (Counts V, VI, and VII).[5] Defendants maintain that the evidence produced at trial does not support the convictions under § 894 because the victim (undercover detective Vecchiarelli) voluntarily repaid the loans and defendants never made any affirmative extortionate acts to collect them. In response, the government argues that the initial threat given when the first loan was extended "carried over" to each payment. The government reasons that even though the single extortionate act was made during the initial extension of the loan and not during any attempted collection, § 894 is satisfied because each payment was made with the understanding that negative consequences could occur if the payments were not made.[6]

### A. *Standard for Judgment of Acquittal*

 Federal Rule of Criminal Procedure 29 states that:

> The court on motion of a defendant or of its own motion shall order the entry of judgment of acquittal of one or more offenses charged in the indictment or information after the evidence on either side is closed if the evidence is insufficient to sustain a conviction of such offense or offenses.

Fed.R.Crim.P. 29(a). Where this motion is made and the decision is reserved by the court, the court "must decide the motion on the basis of the evidence at the time the ruling was reserved." Fed.R.Crim.P. 29(b). *See United States v. Giampa*, 758 F.2d 928, 934 (3d Cir.1985) ("a judgment of acquittal should be entered only upon consideration of the sufficiency of the Government's evidence.") (citing *United States v. Martin Linen*, 430 U.S. 564, 572, 97 S.Ct. 1349, 1355, 51 L.Ed.2d 642 (1977) and *United States v. Horton*, 180 F.2d 427 (7th Cir.1950)). "[T]he district court must determine whether the Government has adduced sufficient evidence respecting each element of the offense charged to permit jury consideration. The district court cannot and should not weigh the evidence." *Giampa*, 758 F.2d at 934 (citing 3 Wharton's Criminal Procedure § 520 at 434–36 (12th ed.1975) and *Tibbs v. Florida*, 457 U.S. 31, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982)). The evidence, however, must be viewed in the light most favorable to the Government: "[I]f there is sufficient evidence in the record upon which a rational jury could find beyond a reasonable doubt that the Government has proved all of the elements of the offense charged, a motion for

---

**5.** Defendants, upon making their Rule 29 motion and in their post-trial briefs in support of this motion, also advance other arguments for relief. For example, all defendants maintain that the prosecutor committed acts of misconduct necessitating a new trial. Moreover, defendant Lore claims that there was insufficient evidence to link him to any of the conduct, and also that the federal loansharking statutes are unconstitutional as beyond the reach of Congress' authority to regulate interstate commerce in light of *United States v. Lopez*, 514 U.S. 549, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995). Only the convictions under 18 U.S.C. § 894 will be discussed here.

**6.** The government also asserts that since Count VII (based on Antos' second loan) was marked with the use of extortionate means by defendants against Antos, defendants' Rule 29 Motion based on the convictions under § 894 should be limited only to Counts V and VI. To the extent that Count VII is based on defendants' collection of Antos' debt that was assumed by Vecchiarelli, it will be discussed in the context of this motion, but to the extent that Count VII is based on defendants' collection of Antos' debt from Antos, it will not be, as it was supported by sufficient evidence at trial.

acquittal may not be granted." *United States v. Levy*, 694 F.Supp. 1136, 1138–39 (D.N.J.1988) (quoting *United States v. Mastro*, 570 F.Supp. 1388, 1390 (E.D.Pa.1983) (citing *United States v. Pratt*, 429 F.2d 690 (3d Cir.1970) and *United States v. Doan*, 710 F.2d 124, 126–27 (3d Cir.1983))). Thus, the issue is whether, under the facts presented at trial and viewed in the government's favor, the charges for the use of extortionate means in the collection of a loan under 18 U.S.C. § 894 were substantiated by defendants' conduct.

## B. *Sufficiency of the Evidence*

■ Section 894, "Collection of extensions of credit by extortionate means," states that:

(a) Whoever knowingly participates in any way, or conspires to do so, in the use of any extortionate means

(1) to collect or attempt to collect any extension of credit, or

(2) to punish any person for the nonrepayment thereof,

shall be fined under this title or imprisoned not more than 20 years, or both. 18 U.S.C. § 894(a). "Extortionate means" is defined in § 891(7) as "any means which involves the use, or an express or implicit threat of use, of violence or other criminal means to cause harm to the person, reputation, or property of any other person." Contrary to the government's unsupported assertion, § 894 focuses on the conduct of the defendant, not whether the victim was subjectively placed in fear. *United States v. DiSalvo*, 34 F.3d 1204, 1211 (3d Cir.1994) ("it is not necessary to prove . . . that actual fear was instilled in the debtor or victim."); *United States v. Polizzi*, 801 F.2d 1543, 1548 (9th Cir.1986) ("It is the nature of the actions of the person seeking to collect the indebtedness, not the mental state produced in the debtor, that is the focus of the inquiry for the jury."); *United States v. Zimmitti*, 850 F.2d 869, 873 (2d Cir.1988) ("In other words, it is the conduct of the defendant, not the victim's individual state of mind, to which the thrust of the statute is intended.") (quoting *United States v. Natale*, 526 F.2d 1160, 1168 (2d Cir.1975), *cert. denied*, 425 U.S. 950, 96 S.Ct. 1724, 48 L.Ed.2d 193 (1976)).

Defendants claim that the evidence was insufficient to warrant convictions under § 894 because, for each and every repayment of interest or principal, defendants were sought out by Detective Vecchiarelli and they never committed an affirmative act to collect by "the use, or an express or implicit threat of use, of violence or other criminal means to cause harm to the person, reputation, or property of" Detective Vecchiarelli. 18 U.S.C. § 891(7). The government, however, argues that the singular threat made by defendant Britt (on behalf of himself and defendants Lore and Guagliardo) when the first loan was extended to Vecchiarelli can "carryover" to each repayment. Thus, in the government's view, it is not realistic to require an additional threat with each collection, because the initial explicit threat motivated Vecchiarelli to make each of the payments on time.

Preliminarily, it should be noted that the government is correct in stating that an extortionate threat is not necessary for each and every collection to form violations of § 894. In *United States v. Smith*, 464 F.2d 1129 (2d Cir.), *cert. denied*, 409 U.S. 1023, 93 S.Ct. 462, 34 L.Ed.2d 314, and *cert. denied*, 409 U.S. 1076, 93 S.Ct. 684, 34 L.Ed.2d 664 (1972), a case cited by the government, the victim was extended a number of extortionate loans, fell behind on his payments, and received a number of visits by the defendants who were eager to collect. On some, but not all of these occasions, the defendants brutally threatened the victim, his family and his property. *Id.* at 1134–35. The Second Circuit Court of Appeals held that these threats were sufficient to satisfy the "extortionate means" requirement of § 894 for payments made to the defendants weeks after these threats were made. *Id.* at 1135 ("We refuse to read Section 894 as requiring that each collection be accompanied by an overt threat.").

However, while *Smith* states that § 894 does not necessarily require a threat with each collection, it does not support the government's "carry-over" theory under the facts of the present case. *Smith* did not concern § 892 but only addressed § 894, and it did not involve a situation where the only

extortionate threat made was on the initial extension of the loan. More importantly, the defendants in *Smith* engaged in multiple explicit threats specifically directed towards collection of the loan after the loan was extended, obviating the need to "carry-over" any threat that was made in a different context (i.e., the formation of the loan arrangement) to substantiate a § 894 charge.

Significantly, while neither the Court nor the parties have found any cases directly on point, those cases that have dealt with § 894 have involved some affirmative act directed towards collection to substantiate the charge. The United States Court of Appeals for the Third Circuit in *United States v. DiSalvo*, for example, addressed the extent to which implied threats could be used to form a § 894 offense. In *DiSalvo*, one of the many cases spawned by the criminal activities of the La Cosa Nostra, defendant DiSalvo employed defendant Leonetti to help him collect an outstanding debt. *Id.* at 1208–09. Leonetti, who was the nephew of mafia family boss Nicodemo Scarfo and the second-ranking member of the Scarfo family, approached the debtor several times to ask for the money he owed. *Id.* at 1207–09. After being convicted of § 894 offenses, the defendants argued on appeal that "the mere use of Scarfo and Leonetti to facilitate collection of the debt" was not sufficient under § 894's requirement of at least an implicit threat. *Id.* at 1211. The court stated that "Leonetti's intervention, standing alone, is not sufficient to prove a § 894 implicit threat case." *Id.* at 1212 (citing *United States v. De Cavalcante*, 440 F.2d 1264 (3d Cir.1971) (reversing extortion conspiracy conviction due to insufficient evidence); *United States v. Zimmitti*, 850 F.2d at 875–76 (reversing convictions under § 894 where debt collectors were merely described as intimidating and threatening men and did not engage in explicit or implicit threats); *United States v. Joseph*, 781 F.2d 549, 554 (6th Cir.1986) (reversing § 894 conviction where neither an explicit or implicit threat was employed because "[a] demand for money is simply not a threat.")). Ultimately, however, the court affirmed the conviction because Leonetti was employed to help collect an outstanding debt and his reputation and high position with the Scarfo family

formed the basis of an implicit threat, satisfying the "extortionate means" requirement of § 894. *DiSalvo*, 34 F.3d at 1213.

While this conclusion may seem to support the government's theory that Vecchiarelli was implicitly threatened to make each loan repayment, upon closer examination *DiSalvo* and the instant case are distinguishable in important ways. *DiSalvo*, like *Smith*, involved threats that were made after the formation of the loan agreement and in furtherance of the separate act of collection of the loan. In the instant case, the government has not shown that the defendants participated in any acts in furtherance of collection. Thus, to support its implicit threat theory, the government takes the single explicit threat made by defendant Britt in the context of the extension and formation of the loan and transforms it into an implicit one in the different context of collection of the loan. This disregards the cases that have addressed § 894 because they have consistently involved, if not required, an affirmative act by defendants specifically directed towards collection.

■ Moreover, neither *DiSalvo* or *Smith*, nor any other case known to this Court, has taken an act that formed a violation of § 892 and used the same act as the sole basis for a § 894 violation. The very fact that Congress has enacted two separate statutes—one criminalizing extortionate *extension* of a loan and one criminalizing extortionate *collection* of a loan—is meaningful. Under the government's broad interpretation of § 894, virtually any time a defendant violates § 892 by extending a loan using extortionate means he or she would also violate § 894 without any additional conduct other than receiving repayments. Indeed, the government claims it has met its burden under both § 892 and § 894 at the moment of repayment because Britt's threat carried over from each offense. This interpretation, however, is unrealistic because every loan agreement contemplates repayment by definition, and the only circumstances under which convictions under both § 892 and § 894 would not be present are those where an extortionate loan is extended but where the creditor chooses not to

**358**

collect.[7] Furthermore, as mentioned above, whether or not the debtor was subjectively threatened is not the appropriate inquiry because § 894 focuses on the acts of the defendants.[8] Here, defendants have a lesser degree of culpability than those defendants who actually and affirmatively employ extortionate means to collect their loans. The government's broad interpretation of § 894 in this case ignores the salient fact that Congress specifically chose to distinguish this conduct in separate statutes, and demeans the more serious situations to which § 894 applies. Therefore, under the circumstances of this case—where defendants used extortionate means in the extension of a loan but did not use any extortionate means, explicit or implicit, in the collection of the loan—convictions under § 894 cannot stand. Defendants' motion for judgment of acquittal pursuant to Fed.R.Crim.P. 29 is granted as to Counts V and VI, and is granted as to Count VII only to the extent that it charges defendants with collection of John Antos' loan from Detective Dennis Vecchiarelli.[9]

### CONCLUSION

For the foregoing reasons the Motions for Judgment of Acquittal by defendants Joseph Lore, Giacomo Guagliardo and Kenneth Britt pursuant to Fed.R.Crim.P. 29 are granted as to Counts V and VI, and are granted as to Count VII to the extent that it charges defendants with collection of John Antos' loan from Detective Dennis Vecchiarelli.

### ORDER

For the reasons set forth in this court's opinion filed even date,

7. An argument could be made that the mere receipt of repayment of an extortionate loan constitutes collection of the loan by extortionate means. Section 891(5) states: "To collect an extension of credit means to induce in any way any person to make repayment thereof." In the present case, this "inducement," would have to be "carried over" from defendant Britt's initial threat. While the definition of "collect" contained in § 891(5) is broad, the focus of this case is on whether or not defendants used "extortionate means" to collect the loans. *See* 18 U.S.C. § 891(7).

8. Thus, the government's contention that "[o]nce a single payment is made by the debtor to the creditor, with the debtor having the understand-

IT IS ORDERED on this 20th day of April, 1998, that Motions for Judgment of Acquittal by defendants Joseph Lore, Giacomo Guagliardo and Kenneth Britt pursuant to Fed.R.Crim.P. 29 are ***GRANTED*** as to Counts v. and VI, and are ***GRANTED*** as to Count VII to the extent that it charges defendants with collection of John Antos' loan from Detective Dennis Vecchiarelli.

ing of the consequences if he were not to pay, the crime under § 894 is complete," is incorrect. Govt.'s Br. at 9.

9. It is the judgment of this Court that no motion for a new trial should be granted if this judgment of acquittal is subsequently vacated or reversed, as this motion does not involve a factual dispute, but concerns the legal question whether, to be liable for using extortionate means in the collection of a loan under 18 U.S.C. § 894, defendants must engage in some additional affirmative act beyond the use of an extortionate means in the initial extension of the loan under 18 U.S.C. § 892. Thus, the issue involved in this appeal would not be impacted by another trial. *See* Fed.R.Crim.P. 29(d).