## GOVERNMENT OF the VIRGIN ISLANDS

v.

## Keith COMMISSIONG, Defendant.

### Crim. A. No. 88-79.

District Court of the Virgin Islands, Division of St. Thomas and St. John.

Feb. 16, 1989.

Terry M. Halpern, U.S. Atty., D. Virgin Islands by Azekah E. Jennings, Asst. U.S. Atty., Charlotte Amalie, St. Thomas, U.S. V.I., for the Government.

Grunert, Stout, Moore & Bruch by John E. Stout, Susan M. Bruch, Charlotte Amalie, St. Thomas, U.S.V.I., for defendant.

## OPINION

BROTMAN, District Judge.*

Presently before the court are the defendant's post-trial motions to dismiss count II of the criminal information, for judgment of acquittal or in the alternative for a new trial on both counts of the information, and

---

* The Honorable Stanley S. Brotman, United States District Judge for the District of New Jersey, sitting by designation.

to set aside his sentence. For the reasons set forth below, the court will deny the motions.

## I. FACTS AND PROCEDURE

■■■ The Government of the Virgin Islands ("the government" or "the prosecution") filed a criminal information on May 16, 1988, charging Keith Comissiong[1] ("Comissiong" or "the defendant") with murder in the first degree and unlawfully possessing a firearm during the commission of a crime of violence. The charges stem from the death of Nancy Linnell, whose body was found by a passerby on a road near the Mandahl Inn in St. Thomas in the early evening of May 3, 1988. The details of how authorities came to charge Comissiong are set forth in this court's decision on the defendant's motion to suppress. *Government of the Virgin Islands v. Commissiong,* 698 F.Supp. 604 (D.V.I. 1988). After refusing to suppress certain evidence for the reasons set forth in that decision, the court held a jury trial from November 14 to 19, 1988.

In summary, during the six-day trial the government presented evidence that Keith Comissiong and Nancy Linnell were in or near Comissiong's car on the road near the Mandahl Inn when she was shot five times. The government produced physical evidence from the vehicle including Linnell's hair fibers and blood. It also introduced expert testimony describing the several bullet entry and exit wounds in the deceased's body. In addition, it produced the bullets removed from Linnell's body, and it produced Comissiong's .357 Dan Wesson magnum revolver, which Comissiong retrieved for them from his home the day after the shooting. The government had no single theory of its case, and it did not demonstrate any particular motive; however, it set forth circumstances from which it contended a jury could infer that the defendant committed murder with willfulness, deliberation, and premeditation. In addition, the government set forth proof that, although Comissiong had a license to carry his .357 magnum revolver, the license contained certain restrictions. The government produced evidence that Comissiong could carry his handgun only during certain hours while he was engaged in lottery business. The government also produced testimony that the defendant was no longer a lottery dealer at the time of the shooting. Moreover, the government contended that although Comissiong still sold lottery tickets on consignment, he did not set out on the afternoon of the shooting to sell tickets. At the close of the prosecution's case, the defendant moved for judgment of acquittal pursuant to Fed.R.Crim.P. 29(a). The court denied the motion.

The defense admitted that Comissiong was with Linnell when she was shot and all but conceded that he shot her. The defense maintained that although she was shot with the defendant's gun in the defendant's car, the jury had to determine why and under what circumstances the shooting occurred. The defense argued that Comissiong was suffering from short-lived cocaine delirium at the time of the shooting and that his actions were in self-defense. The defense put forth the testimony of two psychiatrists indicating that Comissiong suffered from cocaine delirium, a recognized mental illness, when driving Nancy Linnell home on May 3rd. Those witnesses explained, based on their conversations with the defendant, that he apparently missed her turn-off from the main road and stopped suddenly. When he stopped, the

---

1. After trial the court learned that the criminal information misspelled the defendant's surname. Because defense counsel did not attempt to correct the misnomer before the jury reached its verdict, the court may not now amend the information to reflect the proper spelling. *See* Fed.R.Crim.P. 7(e). Consequently the records in this case, including the caption of this opinion, will continue to reflect the improper spelling; nonetheless, the court will use the correct spelling throughout the text of the opinion.

The government has moved for correction of the spelling of Comissiong's name in court records pursuant to Fed.R.Crim.P. 36. Because the error is not merely the court's clerical error such relief is inappropriate. However, the mistake has no effect on the validity of the defendant's conviction. *United States v. Denny,* 165 F.2d 668, 670 (7th Cir.1947), *cert. denied,* 333 U.S. 844, 68 S.Ct. 662, 92 L.Ed. 1127 (1948); *see also United States v. Dolan,* 544 F.2d 1219, 1221 n. 1 (4th Cir.1976).

gun that he had earlier that day placed below the passenger seat of his car slipped forward and Linnell picked it up and brandished it menacingly. The doctors explained that, because he had ingested substantial quantities of cocaine by smoking crack, he went into delirium when he saw her pointing the gun at him. They testified that he remembers nothing further of the shooting except that he tried to wrestle the gun from her, he grasped the cylinder to prevent the gun from firing, and he heard two gunshots. Comissiong also testified, explaining how he had smoked crack that day and how he picked up Nancy Linnell as he was leaving Magens Bay. He testified that he had never seen Nancy Linnell before that day and, although she may have spoken with him briefly on the beach, he did not think he talked with her before she got into his car. He also explained that Linnell asked him for drugs and that he refused, fearing she might be an undercover government agent. But for some details about what transpired before he and Nancy Linnell reached the scene where her body was discovered, his story essentially repeated what the psychiatrists testified to.

After the defense rested, the government presented its rebuttal case, which consisted principally of expert testimony about cocaine delirium. The government's expert witness testified that the defendant's alleged episode was far too short in duration to be cocaine delirium. At the close of all evidence the defense renewed its earlier rule 29(a) motion for judgment of acquittal on both counts of the information. The court again denied the motion.

On November 19, 1988, the jury returned guilty verdicts on both counts of the information. In conformity with Virgin Islands law, the court sentenced the defendant on the first count to imprisonment for the remainder of his natural life without the possibility of parole. See V.I.Code Ann. tit. 14, § 923(a) (Supp.1987) ("Whoever commits murder in the first degree shall be imprisoned for the remainder of his natural life without parole."). On the second count the court sentenced him to a concurrent ten-year term of imprisonment. The defendant has now moved for dismissal of count

II of the information, for judgment of acquittal on both counts pursuant to Fed.R. Crim.P. 29 or in the alternative for a new trial pursuant to Fed.R.Crim P. 33, and for the court to set aside his sentence.

## II. DISCUSSION

### A. *Motion to Dismiss Count II of the Information*

Defendant alleges that the information fails to set forth all of the essential elements of the offense charged and that it fails to set forth sufficient facts to apprise him of the offense charged and is therefore insufficient as a matter of law and must be dismissed. An information "is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *Hamling v. United States*, 418 U.S. 87, 117, 94 S.Ct. 2887, 2907, 41 L.Ed.2d 590 (1974); *see* Fed.R.Crim.P. 7(c)(1). As to Comissiong's claim that the information did not set forth the elements of the crime charged, the *Hamling* Court set forth the appropriate standard for this court's analysis: "It is generally sufficient that an indictment set forth the offense in the words of the statute itself, as long as 'those words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offence intended to be punished.'" *Id.* (quoting *United States v. Carll*, 105 U.S. 611, 612, 26 L.Ed. 1135 (1882)). As to Comissiong's challenge to the absence of factual allegations in the charge, a general description of an offense " 'must be accompanied with such a statement of the facts and circumstances as will inform the accused of the specific offence, coming under the general description, with which he is charged.' " *Id.* 418 U.S. at 117–18, 94 S.Ct. at 2908 (quoting *United States v. Hess*, 124 U.S. 483, 487, 8 S.Ct. 571, 573, 31 L.Ed. 516 (1888)).

### 1. *The Elements of the Crime Charged*

The information sufficiently set forth the elements of the crime charged.

Count II of the criminal information that the United States Attorney filed on May 16, 1988, charged as follows:

> On or about the 3rd day of May, 1988 in the Virgin Islands of the United States, Judicial Division of St. Thomas and St. John, KEITH COMMISSIONG [sic] without being authorized by law, did possess a 357 Dan Wesson Magnum during the commission of a crime of violence, to wit: murder, in violation of Title 14, Virgin Islands Code, Section 2253(a).

Section 2253(a) states:

> Whoever, unless otherwise authorized by law, has, possesses, bears, transports or carries either openly or concealed on or about his person, or under his control in any vehicle of any description any firearm, as defined in Title 23, section 451(d) of this code, loaded or unloaded, may be arrested without a warrant, and shall be sentenced to imprisonment of not less than six months nor more than three years and shall be fined not more than $5,000, except that if such person shall have been convicted of a felony in any state, territory, or federal court of the United States, or if such firearm or an imitation thereof was had, possessed, borne, transported or carried by or under the proximate control of such person during the commission or attempted commission of a crime of violence, as defined in subsection (d) hereof, then such person shall be sentenced to imprisonment of not less than five years nor more than ten years and shall be fined not more than $10,000. The foregoing applicable penalties provided for violation of this section shall be in addition to the penalty provided for the commission of, or attempt to commit, the crime of violence.

V.I.Code Ann. tit. 14, § 2253(a) (Supp.1987). The language of count II tracks the elements of the crime set out in the statute: (1) possessing a firearm (2) without authorization of law (3) during the commission of a crime of violence. The defendant argues that the information should have alleged that he willfully possessed the gun and that he intended to use it against the victim in the commission of the crime charged in count I, murder in the first degree. These contentions have little merit.

Defendant's memorandum in support of his post-trial motions cites *Government of the Virgin Islands v. Grant,* 19 V.I. 440, 446 (Terr.Ct.1983), *aff'd,* 21 V.I. 20 (D.V.I. 1984), *aff'd,* 775 F.2d 508 (3d Cir.1985), for the proposition that willful possession of a firearm and an intention to use it against the victim are elements of the crime charged. However, *Grant* does not deal with section 2253(a) but instead sets forth the elements of a violation of V.I.Code Ann. § 2251(a)(2)(B) (Supp.1987), which proscribes possessing a dangerous weapon with the intent to use it unlawfully against another. According to the *Grant* court the elements of that crime are: (1) the defendant acted willfully; (2) the defendant did possess, bear, transport, or carry a deadly weapon; (3) the defendant intended to use the deadly weapon unlawfully against another; and (4) the weapon was carried or used during the commission of a crime of violence. 19 V.I. at 446–47 n. 7.

The language in section 2251(a)(2)(B) is in part similar to the language in the statute presently at issue to the extent that both laws apply to a person who possesses, bears, transports, carries, or has under his proximate control either a dangerous weapon or a firearm. Neither statute specifically states that the defendant must act willfully. Therefore, to the extent that the *Grant* court held that the defendant's willful action is a necessary element of a violation of section 2251(a)(2)(B), that element is arguably implied as part of a violation of section 2253(a). But assuming, *arguendo,* willful action is an element of unlawfully possessing a firearm during the commission of a crime of violence,[2] failure to state

---

2. In *Government of the Virgin Islands v. Bedford,* 671 F.2d 758 (3d Cir.1982), the Third Circuit approved—without passing on the particular question now before this court—a jury instruction setting out the following summary of the elements of a violation of section 2253(a):

"[O]ne, that he possessed this firearm; two, that he was not licensed to possess it; three, that it meets the definition I have just given you of a firearm, and four, that he possessed it in the attempted commission of a crime of violence...."

that element in the information does not render the information fatally defective. Count II of the information as written sets forth what the defendant had to be prepared to meet at trial. To the extent that willful action is implicit in the statute's language, it is also implicit in the language of the information. *See, e.g., United States v. Behrman,* 258 U.S. 280, 288, 42 S.Ct. 303, 304, 66 L.Ed. 619 (1922) ("If the offense be a statutory one, and intent or knowledge is not made an element of it, the indictment need not charge such knowledge or intent."); *United States v. Fusaro,* 708 F.2d 17, 23 (1st Cir.1983) ("Where the crime is defined by statute without reference to intent, the indictment need not allege it."); *Stapleton v. United States,* 260 F.2d 415, 418 (9th Cir.1958) ("[A]ll essential elements need not be stated directly if they are necessarily implied."); *Braswell v. United States,* 224 F.2d 706, 709 (10th Cir.) ("Where the act charged necessarily includes a general intent or is in its very nature unlawful, it need not be alleged that the act was done unlawfully."), *cert. denied,* 350 U.S. 845, 76 S.Ct. 86, 100 L.Ed. 752 (1955). Consequently, even if willfulness is an implicit element of section 2253(a), it is implied in the statute's language of possession, carrying, transporting, et cetera, and it is implied as well in the information's use of that statutory language.[3]

Although the element of willfulness arguably stems from statutory language common to both section 2251(a)(2)(B) and section 2253(a), the language in the former section from which the *Grant* court found

the element of specific intent to use the deadly weapon against another does not appear in the latter section. Section 2251(a)(2)(B), the more general section, proscribes lawful or unlawful possession, carrying, transportation, et cetera, of any deadly weapon "with intent to use same unlawfully against another." Section 2253(a) more narrowly proscribes unlawful possession of a firearm during the commission of a crime and does not by its language require any intent to use that firearm in the commission of the crime. In *Government of the Virgin Islands v. Williams,* 739 F.2d 936 (3d Cir.1984), the defendants were convicted under section 2253(a) in conjunction with burglary and challenged their conviction on the ground that they did not carry the gun into the dwelling. The court upheld their conviction under that statute, explaining: "[T]he firearms statute does not require that the gun be taken into the dwelling. The statute prohibits the transportation or possession of a firearm during the commission or attempted commission of a crime of violence." *Id.* at 941. Because section 2253(a) does not require intent to use an unlawfully possessed firearm, the criminal information charging Comissiong with violating the statute is valid without an allegation of such specific intent.

### 2. *Factual Basis of the Offense Charged*

 Although the criminal information did not specify the manner in which the defendant's possession of the .357 magnum revolver used to shoot Nancy Linnell was

---

*Id.* at 763 n. 7 (quoting trial court's charge to jury).

Out of an abundance of caution, when instructing the jury in the present case this court used the following language from the defendant's proposed charge setting out the possession element of the offense: "The accused, at the time and place charged in the information, *knew that he* possessed a .357 caliber Dan Wesson revolver...." (emphasis added).

3. In *Bedford* the Third Circuit affirmed a conviction pursuant to the following count of an information charging a violation of section 2253(a):

"On or about the 14th day of September, 1980, in the Virgin Islands of the United States,

Judicial Division of St. Thomas and St. John, WARREN BEDFORD, did unlawfully possess a firearm, to wit: a loaded .25 caliber automatic pistol during the commission of crimes of violence, to wit: Robbery and Assault, in violation of Title 14, Virgin Islands Code, Section 2253(a)."

671 F.2d at 762 (quoting count IV of the criminal information).

Although the question now before the court was not then before the Third Circuit, the court finds it significant that the *Bedford* panel implicitly approved language in a criminal information virtually identical to the language in the information now before the court.

unlawful, such an omission is not a fatal defect. An information must constitute "a plain, concise and definite written statement of the essential facts constituting the offense charged." Fed.R.Crim.P. 7(c)(1). Count II of the information provided such a statement because it told the defendant the basic facts about what he allegedly did in violation of section 2253(a). An information need not set forth the means by which the prosecution hopes to prove that the defendant committed the specified offense. *United States v. Haldeman*, 559 F.2d 31, 124 (D.C.Cir.1976) (en banc), *cert. denied*, 431 U.S. 933, 97 S.Ct. 2641, 53 L.Ed.2d 250 (1977). Where a defendant needs further particularization of the means encompassed in a particular allegation, he can move for a bill of particulars. Fed.R.Crim.P. 7(f); *see United States v. Debrow*, 346 U.S. 374, 378, 74 S.Ct. 113, 115, 98 L.Ed. 92 (1958); *Haldeman*, 559 F.2d at 125.

Comissiong complains that the information should have set forth the factual basis for the assertion that he possessed a gun without being authorized by law, i.e., that he violated the limitations on his firearms license allowing him to carry his gun outside his home only while engaged in lottery dealings between the hours between 9:00 a.m. and 9:00 p.m. First, the court notes that at trial the defense gave no indication that it was ever unclear that the government intended to prove that Comissiong violated the restrictions of his firearms license. Second, if the defense was ever unsure of the means by which Comissiong's possession of his .357 magnum revolver was unlawful, it could have sought a bill of particulars. The court consequently finds that the factual statement in count II of the information sufficiently apprised the defendant of the facts necessary to put him on notice of the precise charge against him.

### B. *Rule 29(c) Motion for Judgment of Acquittal*

Federal Rule of Criminal Procedure 29(c) permits a court to enter judgment of acquittal after the jury returns a guilty verdict. When passing on a rule 29(c) motion, the court must determine whether the government presented sufficient evidence upon which a rational jury could find beyond a reasonable doubt that it proved each element of the offense for which defendant seeks acquittal; if the prosecution presented such evidence at trial, the court must deny the motion. *United States v. Doan*, 710 F.2d 124, 127 (3d Cir.1983); *see also United States v. Levy*, 694 F.Supp. 1136, 1138–39 (D.N.J.1988); *United States v. Mastro*, 570 F.Supp. 1388, 1390 (E.D.Pa. 1983). In reviewing the evidence set out at trial, the court must consider that evidence in the light most favorable to the government. *United States v. Pratt*, 429 F.2d 690, 691 (3d Cir.1970); *Mastro*, 570 F.Supp. at 1390.

### 1. *Count I—Murder in the First Degree*

The defendant asserts that the government failed to establish malice and willfulness, deliberation, and premeditation. He argues that the government's case combined with his claims that he ingested cocaine before the shooting, that Nancy Linnell was intoxicated, and that Nancy Linnell had previously been convicted of a drug offense are insufficient for a jury to infer either the malice necessary to find him guilty of murder or the willfulness, deliberation, and premeditation necessary for a conviction of murder in the first degree. The court nonetheless finds that the evidence presented at trial supports the jury's guilty verdict on count I of the information.

■ Under Virgin Islands law, "Murder is the unlawful killing of a human being with malice aforethought." V.I.Code Ann. tit. 14, § 921 (1964). Section 922 of the same title categorizes first and second degree murder:

(a) All Murder which—

(1) is perpetrated by means of poison, lying in wait, torture or by any other kind of willful, deliberate and premeditated killing; or

(2) is committed in the perpetration or attempt to perpetrate arson, burglary, kidnapping, rape, robbery or mayhem—is murder in the first degree.

(b) All other kinds of murder are murder in the second degree.

The Third Circuit elaborated on section 922(a) in *Government of the Virgin Islands v. Lake*, 362 F.2d 770 (3d Cir.1966):

To premeditate a killing is to conceive the design or plan to kill. A deliberate killing is one which has been planned and reflected upon by the accused and is committed in passion engendered by just cause of provocation. It is not required, however, that the accused shall have brooded over his plan to kill or entertained it for any considerable period of time. Although the mental processes involved must take place prior to the killing, a brief moment of thought may be sufficient to form a fixed, deliberate design to kill.

*Id.* at 776 (citations omitted). The government need not present direct evidence of willfulness, deliberation, and premeditation, but instead may rely on inferences to be drawn from the circumstances it proves beyond a reasonable doubt. *Government of the Virgin Islands v. Martinez*, 780 F.2d 302, 305 (3d Cir.1985); *Government of the Virgin Islands v. Roldan*, 612 F.2d 775, 781 (3d Cir.1979), *cert. denied*, 446 U.S. 920, 100 S.Ct. 1857, 64 L.Ed.2d 275 (1980); *Lake*, 362 F.2d at 776.

■ Comissiong's contention that the evidence at trial did not establish malice is meritless. "It is well settled that where the killing is proved to have been accomplished with a deadly weapon malice may be inferred from that fact alone." *Lake*, 362 F.2d at 775. The appeals court explained, "[Malice] is inferred when the killing is effected by the use of a weapon or other instrument in such a manner as may be expected naturally and probably to cause death." *Id.* The government established that Comissiong was with Nancy Linnell when she was shot with his gun. It also demonstrated that she was shot five times with that gun in various parts of her body. A rational jury could have concluded beyond a reasonable doubt that Comissiong shot her. Moreover, the fact that he shot her with a deadly weapon, his .357 magnum revolver, suffices to render reasonable the

jury's finding of malice beyond a reasonable doubt. Even if the jury found that Comissiong was voluntarily intoxicated at the time of the shooting, voluntary intoxication can negate only the specific intent of willfulness, premeditation, and deliberation; it cannot negate malice. *See* V.I.Code Ann. tit. 14, § 16 (1964); *United States v. Lopez*, 575 F.2d 681, 684 (9th Cir.1978).

■ Whether the evidence presented formed sufficient basis for a reasonable jury to find beyond a reasonable doubt that Comissiong acted with willfulness, premeditation, and deliberation presents a more difficult question; nonetheless, the court finds that evidence supported the verdict. In addition to holding that the jury reasonably could have found beyond a reasonable doubt that Comissiong shot Nancy Linnell five times, the court is satisfied that the government's proof of the following facts was sufficient for a jury to find beyond a reasonable doubt that they were true: (1) five bullets entered Nancy Linnell from opposite sides of her body; (2) Comissiong shot her with his own weapon that he brought with him to the scene of the shooting; (3) after the shooting Comissiong left the scene; (4) he removed the gun barrel from his gun and hid it in a dumpster; (5) he cleaned his gun, clothes, and car after the incident; (6) he went to an attorney the day following the shooting and lied about his role in the incident; and (7) he went to the police department with a fabricated story about what happened in an attempt to avoid suspicion.

The principal exculpatory facts that did not come from Comissiong either directly or indirectly are that (1) sometime before he went to police headquarters on the day following the shooting he ingested cocaine; (2) Nancy Linnell had alcohol in her blood when she died; and (3) Nancy Linnell had been convicted of a drug offense. Virtually every other significant exculpatory assertion about the events surrounding the shooting came from the defendant, and a reasonable jury could have discounted what he said. Comissiong's most compelling argument for overturning the verdict is that his voluntary intoxication negated willful-

ness, deliberation, and premeditation. However, Comissiong's word is the only proof that he ingested cocaine prior to the shooting, and the jury reasonably could have disbelieved his story. Moreover, even if the jury thought that he were under the influence of cocaine when he shot Nancy Linnell, it still could have reasonably determined beyond any reasonable doubt that he had the requisite mental state to commit murder in the first degree.

The defendant argues that the circumstances proved at trial are insufficient as a matter of law to establish the elements of first degree murder. He contends that the totality of the circumstances in *Government of the Virgin Islands v. Lake*, 362 F.2d 770 (3d Cir.1966), involved many more factors than do the circumstances in this case. Although the court recognizes that in *Lake* the circumstances indicated a likely motive, the Third Circuit in *Government of the Virgin Islands v. Roldan*, 612 F.2d 775 (3d Cir.1979), *cert. denied*, 446 U.S. 920, 100 S.Ct. 1857, 64 L.Ed.2d 275 (1980), permitted an inference of willfulness, premeditation, and deliberation from more narrow circumstantial facts. Citing authority from other jurisdictions, the *Roldan* court noted that "a jury may infer premeditation merely from the use by the defendant of a deadly weapon ... particularly where such a weapon is used on an unarmed victim and is disposed of thereafter." *Id.* at 782 (citations omitted). The jury was entitled to make such an inference in the present case, and consequently the court cannot enter judgment of acquittal on count I.

### 2. *Count II—Unlawful Possession of a Firearm*

Although the defendant concedes that the government proved that he possessed his .357 magnum revolver during the commission of a crime of violence, he argues that the government failed to put forth sufficient evidence upon which a reasonable jury could find beyond a reasonable doubt that he possessed it unlawfully. Because Comissiong apparently lost his firearms license certificate, the government called to the witness stand the police officer responsible for registering firearms in St. Thomas. That officer testified as to the specific restrictions on Comissiong's license, specifically, that he could use his weapon for home protection and could carry it between 9:00 a.m. and 9:00 p.m. while engaged in lottery dealings. The police officer testified that these restrictions were written on Comissiong's license application, the place where the Virgin Islands Department of Public Safety customarily records such restrictions. The prosecution also called to the witness stand a lottery official who explained that at the time of the shooting the defendant was no longer an official lottery dealer. That official also testified that people who are not official dealers sometimes sell lottery tickets on consignment.

Comissiong testified at trial that although he was no longer an official dealer at the time of the shooting, from time to time he continued to sell lottery tickets on consignment. He now claims that the government failed to prove beyond a reasonable doubt that he was not engaged in lottery dealings at the time of the shooting. The court disagrees. Because it is sometimes impossible to prove a negative proposition beyond reasonable doubt, the government must in certain circumstances prove beyond a reasonable doubt certain facts from which a jury can reasonably infer beyond a reasonable doubt that something did not occur. In this case, Comissiong's argument amounts to an assertion that because he frequently engages in lottery dealings while traveling around St. Thomas in his vehicle he is licensed to carry his revolver whenever he is driving around the island. The government established through Comissiong's own testimony that he spent the afternoon at Hull Bay, Peters Bay, and Magens Bay relaxing and smoking crack. He theoretically could have been carrying lottery tickets, ready to sell them should he see one of his regular customers. However, under these circumstances, even if he were carrying a few tickets and stood ready to make a fortuitous sale, the jury was entitled to find through inference as fact beyond a reasonable doubt that he was not engaged in lottery dealings at the time of the shooting.

If the law were otherwise, Comissiong could legally carry his gun in his car between 9:00 a.m. and 9:00 p.m. every day as long as he kept a few lottery tickets in his glove compartment. The court therefore cannot enter judgment of acquittal on count II.

### C. *Rule 33 Motion for New Trial*

■ "The court on motion of a defendant may grant a new trial to that defendant if required in the interest of justice." Fed.R.Crim.P. 33. The decision whether to grant a new trial is in the trial court's sound discretion. *United States v. Mastro*, 570 F.Supp. 1388, 1390 (E.D.Pa.1983). The court can grant the defendant's motion on one of two grounds: First, the court may grant a new trial if, after weighing the evidence, it determines that there has been a miscarriage of justice. *Id.* (citing *United States v. Phifer*, 400 F.Supp. 719, 723 (E.D. Pa.1975), *aff'd mem.*, 532 F.2d 748 (3d Cir. 1976)); *see Government of the Virgin Islands v. Leycock*, 93 F.R.D. 569, 571 (D.V. I.1982) (court may exercise discretion to grant new trial in exceptional circumstances if evidence preponderates heavily against verdict). Second, the court must grant a new trial if trial error had a substantial influence on the verdict. *Mastro*, 570 F.Supp. at 1390.

#### 1. *The Weight of the Evidence*

After reviewing the evidence, the court does not find that the jury's verdict on counts I and II of the information worked an injustice. The court recognizes that its role in passing on defendant's rule 33 motion is to weigh the evidence rather than examine its sufficiency, *see United States v. Messerlian*, 633 F.Supp. 1493, 1513 (D.N. J.1986), and in doing so may weigh the credibility of witnesses. *See United States v. Clemons*, 658 F.Supp. 1116, 1119 (W.D. Pa.1987). *See generally United States v. Levy*, 694 F.Supp. 1136, 1144–45 (D.N.J. 1988). In *Levy* this court clarified its view of the proper approach to a new trial motion by explicitly rejecting the approach of some courts of sitting as a "thirteenth juror," *see, e.g., United States v. Turner*, 490 F.Supp. 583, 593 (E.D.Mich.1979), *aff'd*

*mem.*, 633 F.2d 219 (6th Cir.1980), *cert. denied*, 450 U.S. 912, 101 S.Ct. 1351, 67 L.Ed.2d 336 (1981), and instead holding that

> [T]his court does not believe that its discretion "extend[s] to the grant of a motion if the evidence were to fail to convince us of guilt beyond a reasonable doubt—as it would if we were to sit as a juror. Rather, we are empowered to grant a new trial only if we are convinced that the evidence is such that the verdict was not 'rational', or if the verdict is against the weight of the evidence."

694 F.Supp. at 1144–45 (quoting *Messerlian*, 633 F.Supp. at 1514 (citing *United States v. Powell*, 469 U.S. 57, 66, 105 S.Ct. 471, 477, 83 L.Ed.2d 461 (1984))).

The most basic question in this case was the defendant's credibility. As explained in the preceding section, the government met its burden in establishing beyond a reasonable doubt the elements of the crimes charged. If the jury believed Comissiong's testimony, it would not have returned the verdict that it did. There was no strong evidence corroborating Comissiong's version of the events that took place when Nancy Linnell was shot. Moreover, the weight of the evidence—especially the expert testimony about the angles of the bullet entry and exit wounds—rendered much of Comissiong's testimony incredible. Quite simply, the court finds that the weight of the evidence supported the jury's verdicts on both counts of the information. The two guilty verdicts did not constitute a miscarriage of justice and the court therefore cannot overturn them.

#### 2. *Alleged Errors at Trial*

A criminal defendant is entitled to a fair trial, but not a perfect one. *Delaware v. Van Arsdall*, 475 U.S. 673, 681, 106 S.Ct. 1431, 1436, 89 L.Ed.2d 674 (1986); *United States v. Levy*, 694 F.Supp. 1136, 1145 (D.N.J.1988). This court must grant defendant's rule 33 motion on the ground of trial error only "if there is a reasonable probability that trial error could have had a substantial influence on the jury's deci-

sion." *United States v. Mastro*, 570 F.Supp. 1388, 1390 (E.D.Pa.1983) (citing *Government of the Virgin Islands v. Bedford*, 671 F.2d 758, 762 (3d Cir.1982)).

*(a) Limitation of Closing Arguments*

■ The defendant contends that the court abused its discretion in limiting closing arguments and that those limitations were so prejudicial as to warrant a new trial. A trial court has broad discretion to limit the time and scope of closing arguments as long as the defendant is permitted to make all legally tenable arguments supported by the facts brought out at trial. *United States v. Gaines*, 690 F.2d 849, 858 (11th Cir.1982); *see also United States v. Bednar*, 728 F.2d 1043, 1049 (8th Cir.1984); *United States v. Roe*, 670 F.2d 956, 971 (11th Cir.), *cert. denied*, 459 U.S. 856, 103 S.Ct. 126, 74 L.Ed.2d 109 (1982); *United States v. Furey*, 491 F.Supp. 1048, 1072 (E.D.Pa.1980), *aff'd mem.*, 636 F.2d 1211 (3d Cir.), *cert. denied*, 451 U.S. 913, 101 S.Ct. 1987, 68 L.Ed.2d 304 (1981); *United States v. Currie*, 609 F.2d 1193, 1194 (6th Cir.1979), *cert. denied*, 445 U.S. 928, 100 S.Ct. 1314, 63 L.Ed.2d 760 (1980). It is the court's responsibility to instruct the jury as to the applicable law, and the court can exercise its discretion in limiting closing arguments to prevent counsel from arguing abstract legal propositions. *United States v. Bowden*, 579 F.Supp. 337, 343–44 (M.D.Tenn.1983); *cf., e.g., United States v. Clausen*, 792 F.2d 102, 106 (8th Cir.), *cert. denied*, 479 U.S. 858, 107 S.Ct. 202, 93 L.Ed.2d 133 (1986); *United States v. Kramer*, 711 F.2d 789, 794 (7th Cir.), *cert. denied*, 464 U.S. 962, 104 S.Ct. 397, 78 L.Ed.2d 339 (1983).

■ Comissiong first argues that the court should not have limited each side's closing arguments to one hour. However, this complaint is without merit. The court clearly instructed the prosecution and the defense on the day before closing arguments that it would limit those arguments to one hour per side. The court repeated that instruction the following day just prior to the arguments. The prosecution had no trouble complying with the limitation, re-serving ten minutes for rebuttal and still finishing before the time expired. The defense, on the other hand, went on for more than an hour. In the court's recollection, that argument lasted approximately seventy-five minutes, and at no time did the court indicate that the allotted hour had passed. The court believes that counsel had an ample opportunity to summarize the case, and therefore finds that setting a one-hour limitation was well within its discretion.

■ Second, Comissiong contends that the court should not have stopped defense counsel from setting forth abstract legal definitions of the elements of murder and manslaughter. At or near the time the defendant's hour for argument had expired, defense counsel began to discuss abstract legal principles that would be part of the court's jury charge. Concerned that defense counsel would squander the remaining time on such abstractions, the court indicated that counsel should focus on arguing the facts of the case instead of stating rules of law. However, the court did not prevent counsel from making factual arguments in terms of the applicable law. The court recalls that after its admonition defense counsel did discuss the controlling legal principles as they related to the facts of the case. The court provided appropriate instruction to the jury about the meaning of the elements of the crime charged, and therefore any limitation on counsel's argument caused no prejudice to the defendant. Consequently, the court finds that it did not abuse its discretion.

*(b) Alleged Evidentiary Errors*

■ (i) *Photographs of the deceased.* The court admitted into evidence two Polaroid color snapshots of the deceased, one showing her as she lay on the roadside shortly after her body was discovered and the other showing her face. Together, these two photographs identified the corpus delicti, indicated the location of the deceased's wounds, and indicated the position of her body. The government authenticated the photographs with the testimony of Donna Lambert, who discovered Nancy

Linnell's body shortly after the shooting. She indicated that the photographs fairly and accurately depicted the deceased's body as she saw it in the road. The court found that testimony sufficient to establish that the photographs were what the government claimed them to be—depictions of Nancy Linnell's body as it was found. *See* Fed.R.Evid. 901(a); *see also United States v. McNair*, 439 F.Supp. 103, 105 (E.D.Pa.1977), *aff'd mem.*, 571 F.2d 573 (3d Cir.), *cert. denied*, 435 U.S. 976, 98 S.Ct. 1626, 56 L.Ed.2d 71 (1978).

The defendant asserted that the prejudicial effect of the photographs outweighed their probative value. The court may exclude relevant evidence if the danger of unfair prejudice substantially outweighs its probative value. Fed.R.Evid. 403. However, the court refused to exclude the photographs because it found that they were the least inflammatory of those the government had of the scene where the body was discovered. Together they showed the deceased's face, the location of her wounds, and the position of her body. Consequently, they had probative value on the questions of identification, self-defense, and premeditation. *See United States v. Kilbourne*, 559 F.2d 1263, 1264–65 (4th Cir.), *cert. denied*, 434 U.S. 873, 98 S.Ct. 220, 54 L.Ed.2d 152 (1977); *United States v. Odom*, 348 F.Supp. 889, 894–95 (M.D.Pa. 1972), *aff'd mem.*, 475 F.2d 1397 (3d Cir.), *cert. denied*, 414 U.S. 836, 94 S.Ct. 182, 38 L.Ed.2d 72 (1973). In weighing probative value against the possibility of substantial prejudice, the court believes that it properly exercised its discretion in admitting the photographs into evidence.

■ (ii) *Detective Christopher's report.* The defense called as a witness Detective Granville Christopher of the Virgin Islands Police Department to testify that the Virgin Islands Attorney General's office received telephonic threats against Comissiong. Christopher testified that he was told to investigate such threats, but when asked to read from his report what Assistant Attorney General Joanne Bozzuto said that the caller told her, the prosecution objected on the ground that such state-

ments were hearsay. The court sustained the objection although defense counsel pressed the issue because Ms. Bozzuto was off-island and therefore unavailable to testify.

The court found Ms. Bozzuto's statement contained within Detective Christopher's report to be inadmissible hearsay. *See* Fed.R.Evid. 802. Although the report itself could be admissible, *see* Fed.R.Evid. 803(8), her statement could not be used to prove the specific contents of the threat. The defense now renews its argument that it sought to admit Ms. Bozzuto's statement not for the truth of the matter asserted but to show the defendant's state of mind (as a possible explanation for his failure to disclose his complete story to his psychiatrists). However, there are three levels of possible hearsay here: (1) the report; (2) Ms. Bozzuto's statement in that report; and (3) the caller's statement to Ms. Bozzuto. Although the caller's statement is not hearsay because the defendant does not offer it for its truth, Detective Christopher —the author of the report—did not hear the threat and therefore could not report on it without accepting Ms. Bozzuto's statement as true. Moreover, the defense presented to the jury the fact that threats had been made against the defendant and that he knew about those threats. This court's ruling kept from the jury only Ms. Buzzoto's specific statements that the caller had a "southern male voice" and said, "Why is he out on bail? Well I guess that gives us a better shot at getting him." Consequently, even if the court incorrectly failed to admit her statements, that failure could not have substantially influenced the verdict because the jury nonetheless heard that Comissiong knew he had been threatened.

■ (iii) *Limitation of Angela Tollen's testimony.* Comissiong charges that this court's limitation of Angela Tollen's testimony constituted prejudicial error. Ms. Tollen first testified during the government's case-in-chief, at which time she stated that she had known Nancy Linnell for approximately ten years. The court refused to permit her to testify then about the decedent's character, but indicated that the court would admit such evidence

during the defense's case if the defense could establish that such testimony would be relevant to its self-defense claim. During its case the defense recalled Angela Tollen to the witness stand, and the court allowed the defense to examine her as if on cross-examination. The court first asked counsel to voir dire the witness out of the hearing of the jury. She testified that Linnell had been convicted of possessing L.S.D. with intent to distribute in Arkansas in 1983, and that she did not know of any other criminal convictions.

The court found that pursuant to Fed.R. Evid. 404(a)(2) it had to admit into evidence testimony about character traits of the victim that are pertinent to the conduct the defendant contends she engaged in. The defendant claimed that the shooting was provoked by the victim after she repeatedly asked him for drugs and he refused to help her. The court found that evidence of Ms. Linnell's involvement with drugs was pertinent to defendant's claim that on the day of the shooting she acted in conformity with that character trait. The court also ruled, however, that evidence of previous drug involvement was not pertinent to whether the victim acted in a violent manner. Consequently, the court instructed the jury that testimony elicited from Ms. Tollen "is being admitted solely for the purpose of showing the victim's familiarity and involvement with drugs."

In the presence of the jury defense counsel questioned Ms. Tollen about Nancy Linnell's Arkansas drug conviction. The court did not permit questioning about those events that Ms. Tollen had indicated she knew nothing about during earlier voir dire. The court now finds that it did not err by so limiting Ms. Tollen's testimony. The court believes that it gave the defense every benefit of its doubt as to the relevance of Linnell's character. There was no point to permitting defense counsel to ask leading questions about things that the witness earlier said she knew nothing about. Moreover, even if this court's limitation of Ms. Tollen's testimony were in some way erroneous, such error would not have substantially influenced the jury's verdict because defense counsel was able to elicit the fact of Nancy Linnell's drug-related felony conviction.

■ (iv) *Testimony of Corporal Robinson.* Comissiong contends that the court erred by admitting Corporal Robinson's testimony into evidence. She testified about the procedures that the Virgin Islands Department of Public Safety ("the Department") followed in recording information about firearms licenses. The defense moved in limine prior to her testimony to exclude it on the ground that the government failed to provide any proof of Comissiong's allegedly unlawful possession of a firearm. The defense claimed that the government failed to provide a photocopy or other record of the license that the Department issued to Comissiong. Moreover, the defense claimed that the best evidence rule required the government to produce the actual license or a photocopy of it. The court denied the motion in limine.

Corporal Robinson explained the record-keeping procedures the Department uses to process firearms licenses. She testified that blank licenses come from booklets, and each license has a stub. Although the stub contains a form on which the Department could record the information contained on the license from which it was detached upon issuance, its practice is not to use the stub. Because the used booklets containing the stubs are difficult to store, the Department instead records pertinent information about the licenses on the back of the original and renewal license applications. The Department's practice is to give the license holder the original license, and it does not make a photocopy of that document. Those applications are kept on permanent file, and Corporal Robinson brought Comissiong's renewal application to court with her and from it she read the restrictions on Comissiong's license. She explained that she personally inscribed those restrictions on Comissiong's license.

Comissiong had the only copy of his firearms license, and he claimed that he lost it sometime before trial. Consequently, the only evidence the government had available to prove the restrictions on that license was

Comissiong's license renewal application, the pertinent part of which Corporal Robinson read into the record during her direct examination. Despite defendant's assertion to the contrary, allowing Corporal Robinson to testify did not violate the best evidence rule. *See* Fed.R.Evid. 1004(1), (3). Moreover, the government provided defense counsel with a copy of the Department's file about which Corporal Robinson testified. Because the defense suggested that it did not have all the material in the file, after Corporal Robinson's testimony the court directed defense counsel to compare its photocopies with the actual file. Finally, although the defendant suggests that the procedure for recording license restrictions is itself too untrustworthy to permit Corporal Robinson to testify about it, the question of the procedure's reliability was for the jury to decide. The court is satisfied that it properly admitted her testimony.

*(c) Alleged Errors in Jury Instructions*

 (i) *Involuntary manslaughter and excusable homicide.* Comissiong contends that the court erred by refusing to instruct the jury on count I of the information on the lesser-included offense [4] of involuntary manslaughter and on excusable homicide. In addition to proposing an instruction on the crime charged in count I of the information, defense counsel requested the court to instruct the jury on the offenses of murder in the second degree, voluntary manslaughter, and involuntary manslaughter, and on excusable homicide and justifiable homicide. A trial court need

not instruct the jury on a lesser-included offense unless the evidence at trial is such that a jury could rationally find the defendant guilty of the lesser offense and not the greater. 3 C. Wright, *supra* note 4, § 515, at 21. The court gave instructions on all but involuntary manslaughter and excusable homicide because the court found that the facts adduced at trial could not support a jury verdict on either.

 The court properly refused to instruct the jury on the offense of involuntary manslaughter. Under Virgin Islands law,

Manslaughter is the unlawful killing of a human being without malice aforethought. It is of two kinds—

(1) voluntary; upon a sudden quarrel or heat of passion; or

(2) involuntary; in the commission of an unlawful act, not amounting to a felony; or in the culpable omission of some legal duty; or in the commission of a lawful act which might produce death, in an unlawful manner, or without due caution and circumspection.

V.I.Code Ann. tit. 14, § 924 (1964). The defendant argues that on the evidence put forth at trial a jury rationally could have found him guilty of involuntary manslaughter. However, the court disagrees. Comissiong's testimony, if believed, showed that he struggled with Nancy Linnell after she brandished his revolver. On those facts a rational jury would acquit him on the ground of self-defense. He claims that the jury reasonably could have found him guilty of involuntary manslaughter if

---

**4.** The court's decision not to charge the jury on involuntary manslaughter was due to its determination that the facts adduced at trial did not support such a verdict rather than any determination that involuntary manslaughter is not a lesser-included offense of the crime charged. The government contends that involuntary manslaughter is not a "necessarily included offense," *see* Fed.R.Crim.P. 31(c), of murder in the first degree. To the contrary, the court finds that involuntary manslaughter is a necessarily lesser included offense of premeditated murder. In *Government of the Virgin Islands v. Carmona,* 422 F.2d 95 (3d Cir.1970), the Third Circuit held that "voluntary manslaughter is not 'necessarily included' in felony murder, since felony murder does not necessarily entail a sudden quarrel or

heat of passion." *Id.* at 101. Regardless of the wisdom of that holding, it is inapplicable to the present case. This case involves premeditated murder rather than felony murder, and this court found that the facts warranted a jury instruction on what it considered to be the lesser-included offenses of murder in the second degree and voluntary manslaughter. Defendant's instant motion asks the court to consider whether it erred by failing to charge the jury on the offense of involuntary manslaughter and on excusable homicide. Neither the *Carmona* holding nor its underlying rationale support the government's argument that involuntary manslaughter is not necessarily included in the crime charged. *See* 3 C. Wright, *Federal Practice and Procedure* § 515, at 21–22 & nn. 8–9.

it found that he acted in self-defense but also found that he used more than reasonable force or that he should have retreated. However, if those were the facts voluntary manslaughter would have been the proper verdict because they demonstrate a killing upon a sudden quarrel rather than a killing in the culpable omission of some legal duty.

■ The court also properly refused to instruct the jury on excusable homicide. Under Virgin Islands law homicide is excusable

(1) when committed by accident and misfortune, or in doing any lawful act by lawful means, with usual and ordinary caution, and without any unlawful intent; or

(2) when committed by accident and misfortune, in the heat of passion, upon any sudden and sufficient provocation, or upon a sudden combat, when no undue advantage is taken, nor any dangerous weapon used, and when the killing is not done in a cruel or unusual manner.

*Id.* § 926. Comissiong contends that the facts of his case support a jury finding that Nancy Linnell's shooting was by accident and misfortune, but the court disagrees. Assuming the jury believed Comissiong's version of the events, it could not have reached such a verdict. Because Comissiong testified that he willfully ingested cocaine and was therefore unlawfully intoxicated at the time of the event, a rational jury rejecting his self-defense and mental illness claims could not acquit him by finding excusable homicide. Moreover, the evidence fails to support a verdict of excusable homicide for the same reasons that it could not support a verdict of involuntary manslaughter.

■ In addition, assuming, *arguendo*, the court erred in failing to instruct the jury that they could find Comissiong guilty of the lesser-included offense of involuntary manslaughter or not guilty by reason of excusable homicide, that error did not substantially prejudice the defendant in light of the jury's actual verdict and the array of choices from which it reached that verdict. *See Ex parte Jordan*, 486 So.2d 485, 489 (Ala.1986) (where jury found de-

fendant guilty of murder trial court's failure to instruct on lesser-included offense of vehicular homicide was harmless error because "on continuum of culpability ... two offenses stood between murder and vehicular homicide"); *People v. Williams*, 374 N.W.2d 158, 164 (Mich.App.1985) (where jury found defendant guilty of first-degree murder trial court's failure to instruct on lesser-included offense of assault with intent to murder was harmless error), *appeal denied*, 430 N.W.2d 148 (Mich.1988); *see also Cooper v. Campbell*, 597 F.2d 628, 631 (8th Cir.1979), *cert. denied*, 444 U.S. 852, 100 S.Ct. 106, 62 L.Ed.2d 69 (1979) (Where "jury was charged on the lesser included offense of second degree murder but returned a verdict of murder in the first degree ... the failure to give instructions on other lesser offenses, even if error, was clearly harmless."); *State v. Nowlin*, 244 N.W.2d 591, 596 (Iowa 1976) (where jury returned verdict of first-degree murder and court instructed jury on first- and second-degree murder failure to instruct on manslaughter was harmless error); *State v. Merrill*, 274 N.W.2d 99, 105 (Minn.1978) ("[T]he verdict of guilty of murder in the first degree indicates that the jury believed the defendant not only had the requisite intent but also acted with premeditation ... that the failure to submit instructions on the lesser offenses did not prejudice defendant on the issue of intent."); *People v. Boettcher*, 69 N.Y.2d 174, 180, 513 N.Y. S.2d 83, 505 N.E.2d 594 (1987) ("[W]here a court charges the next lesser included offense of the crime alleged in the indictment, but refuses to charge lesser degrees than that, ... the defendant's conviction of the crime alleged in the indictment forecloses a challenge to the court's refusal to charge the remote lesser included offenses."); *Wilcox v. State*, 299 So.2d 48, 49–50 (Fla.Dist.Ct.App.1974) (failure to instruct on assault not prejudicial where court instructed on robbery and four lesser-included offenses and jury returned verdict of robbery).

Had the jury thought its decision close on the elements of malice and willfulness, deliberation, and premeditation, it had the option of finding the defendant guilty of

the lesser-included offenses of second degree murder or voluntary manslaughter. Moreover, the jury could have found that he committed justifiable homicide by virtue of self-defense. The jury did not do so. Although the court recognizes that multiple options give a jury a possible compromise verdict, *see United States ex rel. Matthews v. Johnson,* 503 F.2d 339, 346 (3d Cir.1974) (en banc), *cert. denied,* 420 U.S. 952, 95 S.Ct. 1336, 43 L.Ed.2d 430 (1975), in this case instructions on involuntary manslaughter and excusable homicide would not have increased significantly the chance of a compromise verdict. In *Matthews* the Third Circuit held that where the trial court instructed the jury on first- and second-degree murder but erroneously failed to instruct the jury on voluntary manslaughter it committed prejudicial and therefore reversible error. *Id.* at 346. The court explained that "if a jury had three options instead of two, the jury could have compromised on the middle ground of second degree." *Id.* Unlike the situation in *Matthews,* however, the actual instructions in this case gave the jury an array of five possible verdicts: (1) guilty of murder in the first degree; (2) guilty of murder in the second degree; (3) guilty of voluntary manslaughter; (4) not guilty on the ground that the homicide was justifiable (self-defense); and (5) not guilty on the ground of incapacity (mental illness). Had the court given the instructions that the defendant now claims it erroneously omitted, the array of choices would have consisted of seven possible verdicts: (1) guilty of murder in the first degree; (2) guilty of murder in the second degree; (3) guilty of voluntary manslaughter; (4) guilty of involuntary man-

slaughter; (5) not guilty on the ground that the homicide was excusable; (6) not guilty on the ground that the homicide was justifiable (self-defense); and (7) not guilty on the ground of incapacity (mental illness). The court does not believe that the latter array makes a compromise verdict substantially more likely than did the former. Consequently, any error could not have substantially influenced the verdict and thus cannot form the basis for a new trial.

██ (ii) *Unlawful possession of firearm during commission of a crime of violence.* The defendant contends that the court's failure to instruct the jury on the specific factual basis of the firearms charge resulted in substantial prejudice to him.[5] However, that argument does not convince the court that it erred by excising that factual material from the proposed charge. Such information was proper material for closing argument but not for jury instructions. This court's instructions on the firearms charge contained the elements of the offense. *See* 2 C. Wright, *supra* note 4, § 485. The court exercised its discretion to bring the instructions to a reasonable and understandable length by refusing to instruct the jury about the factually specific contentions of the prosecution that it would have to believe to find the defendant guilty.

██ (iii) *Voluntariness instruction.* Comissiong also charges as prejudicial error warranting a new trial the court's refusal to instruct the jury that if it believes any of Comissiong's admissions to the police were involuntarily made it should disregard them.[6] Where a criminal prosecu-

---

5. The court omitted the following language from the defendant's requested charge on the firearms offense:

The Government has specifically claimed that the license contained limitations of use, that the firearm was to be used for home protection and while Mr. Comissiong was engaged in lottery dealings within certain hours. If you find that the Government has failed to prove either that these limitations actually appeared in writing on the permit itself and/or that Mr. Comissiong was in possession of the firearm at a time, place, or circumstance not specifically authorized, then you must find Mr. Comissiong not guilty of this

charge. The accused is not obligated in any way to show that there were limitations of use on the license and what the limitations of use may have been on the license, or that his possession of the firearm was within such limitations of use.

6. Specifically, defense counsel requested the court to give the following instruction:

If it appears from the evidence in the case that a [statement] would not have been made, but for some threat of harm or some offer of promise of immunity from prosecution, or leniency in punishment, or other reward, such a [statement] should not be considered

tion rests in part or in total on a confession by the defendant and where the trial court rules after a suppression hearing that the confession was voluntary, the defendant nonetheless may introduce evidence at trial that the confession was involuntary and therefore incredible. *Crane v. Kentucky*, 476 U.S. 683, 106 S.Ct. 2142, 90 L.Ed.2d 636 (1986). However, this court's decision not to instruct the jury with the requested charge involved very different circumstances than those in *Crane*. There was no confession in this case. The defendant gave several statements to the police, most of them in an attempt to exculpate himself. He consented to searches of his home and his automobile, and he retrieved evidence for the police. However, the prosecution introduced into evidence almost no statements by the defendant that jury disbelief would have negated. In the court's recollection, the only such statement was Comissiong's comment upon his arrest, "Oh, my God, I can't believe I did this." In light of defense counsel's strategy at trial of admitting the defendant's involvement with the shooting and the totality of the evidence presented at trial, even if the jury completely disregarded this statement its verdict would not have been affected. Moreover, *Crane* does not stand for the proposition that if the jury finds that a defendant's consent to search was involuntary it can disregard evidence that resulted from that search; that determination is for the court. The court therefore holds that it properly refused to give the requested voluntariness instruction.

### (d) Alleged Prejudicial Circumstances

■ (i) *Publicity before and during trial.* Comissiong contends that the extensive publicity about his case before and during trial was in part sensationalized and inflammatory. He charges that the jury was likely predisposed to reach a guilty verdict, thus depriving him of a fair trial. The court recognizes that the *Virgin Islands Daily News* highly publicized Nancy Linnell's shooting and that the *Daily News* published letters to the editor demonstrating public outrage about the shooting and about United States Magistrate Geoffrey Barnard's decision to release Comissiong on bail pending trial. Furthermore, the court is aware that throughout the trial the *Daily News* published daily front-page stories documenting the previous day's courtroom events. The court nonetheless believes the defendant received a fair trial.

"The constitutional standard of fairness requires that a defendant have 'a panel of impartial, "indifferent" jurors.' Qualified jurors need not, however, be totally ignorant of the facts and issues involved." *Murphy v. Florida*, 421 U.S. 794, 799–800, 95 S.Ct. 2031, 2036, 44 L.Ed.2d 589 (1975) (quoting *Irvin v. Dowd*, 366 U.S. 717, 722, 81 S.Ct. 1639, 1642, 6 L.Ed.2d 751 (1961)). The *Murphy* Court refused to presume that jurors exposed to pretrial publicity would not be impartial. Rather, the Court placed the burden on the defendant to establish that an individual juror had a preconceived notion about his case so strong that it raises a presumption of partiality. *Id.* 421 U.S. at 800, 95 S.Ct. at 2036. However, the Court left open the possibility that where "the general atmosphere in the community or courtroom is sufficiently inflammatory" such a presumption of partiality also may apply without the defendant demonstrating actual bias. *Id.* at 802, 95 S.Ct. at 2037.

Comissiong has not demonstrated that any jurors were biased by their exposure to publicity about his case. The court's awareness of the media interest in this case

---

as having been voluntarily made, because of the danger that a person accused might be persuaded by the pressure of hope or fear to confess as facts things which are not true, in an effort to avoid threatened harm or punishment, or to secure a promised reward.

If the evidence in the case leaves the jury with a reasonable doubt as to whether a [statement] was voluntarily made, then the jury should disregard it entirely.

If, on the other hand, you find that the [statement] in evidence was voluntarily made, then you will give it such weight as you feel it deserves under the circumstances.

The jury will always bear in mind that the law never imposes upon a defendant in a criminal case the burden or duty of calling any witness or producing any evidence.

1 E. Devitt & C. Blackmar, *Federal Jury Instructions* § 15.07, at 454–55 (3d ed. 1977).

caused it to take certain steps to assure that the defendant received a fair trial before an impartial jury. First, in conducting voir dire during jury selection Magistrate Barnard inquired of potential jurors whether they had read about or otherwise heard about the case. If they had, he inquired whether they had formed any opinion and whether they would nonetheless be able to render a fair and just verdict based solely on the evidence. None of the potential jurors eventually chosen for the panel indicated that they were unable to render a fair, impartial, and just verdict. In addition, during the trial the court instructed the jurors at the end of every trial day that they should not read or listen to any account of the case in the media.[7] Finally, in an abundance of caution, after the court realized the degree of press coverage of the trial, it conducted at sidebar most proceedings that were to be out of the jury's hearing even when the jury was not present. The defendant has not demonstrated any juror's actual predisposition. Moreover, the record contains nothing to support the defendant's assertion that the circumstances of this case give rise to a presumption of inherent prejudice. The court is therefore satisfied that the defendant received a fair trial under the standards the Supreme Court set forth in *Murphy*.

▮ (ii) *The government's alleged failure to disclose exculpatory information.* The defendant contends that the government violated its obligations under *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), by refusing to disclose (1) information about Angela and Larry Tollen; (2) information about Jamie Stafford; (3) an entry data sheet possessed by the Virgin Islands Department of Public Safety; and (4) the identification of a man who may have witnessed the scene of the shooting immediately after it occurred. In *Brady* the Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Id.* at 87, 83 S.Ct. at 1196. *Brady* does not necessarily require pretrial disclosure, but rather requires disclosure allowing sufficient time for the defendant to make use of the material. *See generally* 2 W. LaFave & J. Israel, *Criminal Procedure* § 19.5(e) (1984). Construing recent Supreme Court precedent most favorably to the defendant, where the defense makes a specific request for evidence, such evidence is material if it might have affected the outcome of the trial. *Compare United States v. Agurs*, 427 U.S. 97, 113, 96 S.Ct. 2392, 2402, 49 L.Ed.2d 342 (1976) ("[I]f the omitted evidence creates a reasonable doubt that did not otherwise exist, constitutional error has been committed.") *with United States v. Bagley*, 473 U.S. 667, 682, 105 S.Ct. 3375, 3383, 87 L.Ed. 2d 481 (1985) ("The evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.").

▮ The government called Angela Tollen as a witness to identify Nancy Linnell's corpse in a photograph. Ms. Tollen was Nancy Linnell's neighbor, and at trial it became clear that the two had been acquaintances for several years. In addition, it also became clear at trial that Ms. Tollen's husband, Larry Tollen, was Nancy Linnell's friend for several years and knew more about Linnell's past than did Angela

---

7. Specifically, at the end of each trial day the court gave the following instruction:

As I will caution you during the course of this trial, until this case is submitted to you for your deliberations, you must not discuss this case with anyone or remain within hearing of anyone discussing it. Neither should you read any newspaper article, listen to any radio broadcast or view any television program which discusses the case. If, however, you should become aware of any such story, article or news report, you are to report that matter to me in my chambers at your earliest opportunity so that we may discuss it. Needless to say, should you have any such exposure, you should not mention that fact to any of your fellow jurors. You are to keep an open mind and must not decide any issue in this case until the case is submitted to you for your deliberations under the instructions of the court.

Tollen. However, the court finds that the government gave the defense all the information that it had regarding the Tollens, although that information amounted to only Larry Tollen's name misspelled on an investigative report. The prosecution apparently had not investigated the Tollens' connection with Nancy Linnell's past and therefore had no information on that subject. The government did not plan to call Angela Tollen as a witness until just prior to the trial. Defense counsel complains that the prosecution failed timely to provide them with Ms. Tollen's record of convictions; however, that delay did not prejudice the defendant because his counsel obtained that record independently. Moreover, the government did not call Larry Tollen as a witness and it had no reason to know he had any more information about the shooting than he had already provided. In addition, Angela Tollen testified that Nancy Linnell had a drug conviction. Pursuant to the court's evidentiary ruling on the scope of her testimony, *see supra* section II.C.2(b)(iii), the court probably would not have permitted Larry Tollen to testify about more than it permitted Angela Tollen to do. Consequently, even if the government disclosed the information the defendant charges it had and should have disclosed, that information would not have provided the necessary doubt about the defendant's guilt to mandate a new trial.

 The court must similarly reject the defendant's claim that the government's failure to provide it with either Jamie Stafford's alleged statement or information about his whereabouts prejudiced his case. The defense believes that he may have been Nancy Linnell's lover. The government continues to maintain that it has no statement by Mr. Stafford, although the defense argues that such a contention is contradicted by investigative notes referring to his statement. If defense counsel knew Mr. Stafford's whereabouts or had his statement, they contend that such information could have led to discovery of information about the lifestyle and character traits of the deceased. However, the court is not convinced that further admissible information about the deceased's character

traits would have altered the total mix of evidence presented to raise a reasonable question about whether the jury would have decided otherwise than it did.

 At trial defense counsel became aware for the first time that the Virgin Islands Department of Public Safety had a record pertaining to Comissiong's firearms license known as an entry data sheet. The Department used the entry data sheet to transfer information from the defendant's license application to its computer system. That sheet stated that the license was issued for home protection and target shooting. However, the court finds that, assuming it had the sheet, the government's failure to provide this information prior to trial did not prejudice the defendant because defense counsel became aware of this information at trial and were able to conduct cross-examination regarding it.

 Finally, Comissiong claims that the government failed to disclose the identity of the driver of a white vehicle that passed the shooting scene shortly after the shooting occurred. The government contends that it has no written statement from this individual although it does not claim that it is unaware of his identity. However, the prosecution's failure to disclose this information, assuming it knew his identity, did not constitute a *Brady* violation because his identity is immaterial. Assuming, as defense counsel does, that the driver saw nothing, the court must reject the defendant's claim that this man's testimony would rebut any innuendo that Comissiong dragged Nancy Linnell's body out of his car. Comissiong admits that Ms. Linnell was shot in his car, but claims that her body fell backward onto the roadside. Even considering the sequence of events and the time in which they occurred, the man's testimony that he saw nothing would shed little light on precisely how her body ended up where it did.

The court finds that the government disclosed every requested item of exculpatory evidence in its possession with the possible exception of the identity of the driver of the white car. The court further finds

that, considering the totality of the evidence, none of the items the government did not disclose would have raised a reasonable doubt about the defendant's guilt. The government therefore fulfilled its obligations under *Brady* and consequently the defendant is not entitled to a new trial.

### 3. *Renewal of Suppression Motion*

Defense counsel renewed the defendant's motion to suppress both at the close of the government's case and at the close of all evidence, and the court refused to reconsider its suppression ruling. Defense counsel now argues that the expert testimony about the Federal Bureau of Investigation's chemical analysis of the defendant's blood sample and the expert psychiatric testimony about his condition on the day following the shooting provide a basis for the court to change its previous ruling. However, that testimony did not convince the court that it erred in its determination that the defendant's statements, consent to search, and waiver of rights were voluntary. The further testimony presented at trial is inconclusive and insofar as it indicates that Comissiong's actions were involuntary it is outshadowed by the totality of evidence presented at the suppression hearing. This court's earlier ruling must stand and therefore the court's alleged failure to suppress evidence does not mandate a new trial.

### D. *Motion to Set Aside Sentence*

Comissiong asks this court to set aside his sentence on the ground that it violates the eighth amendment's proscription of cruel and unusual punishment because it is not proportionate to the crime for which he was convicted. This court sentenced the defendant to the mandatory penalty under Virgin Islands law for murder in the first degree, life imprisonment without the possibility of parole. V.I.Code Ann. tit. 14, § 923(a) (Supp.1987). The appropriate constitutional proportionality analysis requires the court to examine the following objective criteria: "(i) the gravity of the offense and the harshness of the penalty; (ii) the sentences imposed on other criminals in the same jurisdiction; and (iii) the sentences

imposed for commission of the same crime in other jurisdictions." *Solem v. Helm*, 463 U.S. 277, 292, 103 S.Ct. 3001, 3010, 77 L.Ed.2d 637 (1983). The *Helm* Court overturned a life sentence without the possibility of parole; however, in that case the crime charged was uttering a "no account" check for $100 (because the petitioner was a recidivist, state law allowed the trial judge to enhance his sentence).

In examining the *Helm* factors, it is clear that the defendant's sentence does not violate the eighth amendment. First, the defendant was convicted of murder in the first degree. Regardless of the circumstances in which he committed the crime, premeditated murder is a crime of the utmost gravity. Similarly, the sentence imposed, life in prison without the possibility of parole, is a penalty of the utmost gravity. At this level of analysis, there appears no disparity. Second, because the defendant's sentence was mandated by Virgin Islands law, every defendant convicted of the same crime in this jurisdiction faces the identical penalty. Third, the defendant has not made any showing that sentences for first degree murder in other jurisdictions are significantly less severe than the penalty for that crime under Virgin Islands law. The court's own research discloses that the Virgin Islands penalty for premeditated murder is not unique. *See, e.g.,* Ark.Stat. Ann. § 5-4-616 (1987) (death or life imprisonment without possibility of parole); Del. Code Ann. tit. 11, § 4209(a) (1987) (same); Mass.Gen.L. ch. 265, § 2 (1988) (same); S.D.Codified Laws Ann. §§ 22-6-1, 22-16-12, 24-15-4 (1988) (life imprisonment without possibility of parole).

Prior to *Helm* the Third Circuit upheld the Virgin Islands penalty for murder in the first degree in the face of an eighth amendment challenge. *Government of the Virgin Islands v. Gereau*, 592 F.2d 192, 194-96 (3d Cir.1979). In so holding, the court noted that in *Schick v. Reed*, 419 U.S. 256, 95 S.Ct. 379, 42 L.Ed.2d 430 (1974), the Supreme Court approved of a life sentence without the possibility of parole. *Id.* at 267, 95 S.Ct. at 385. This court does not read *Helm* to unwork the rationale under-

lying *Schick* and *Gereau*. *See Terrebonne v. Butler*, 848 F.2d 500, 507 (5th Cir.1988) (en banc) (upholding life sentence for sale of heroine); *United States v. Hillsberg*, 812 F.2d 328, 335 (7th Cir.1987) (upholding life sentence in second degree murder case), *cert. denied*, 481 U.S. 1041, 107 S.Ct. 1981, 95 L.Ed.2d 821 (1987). The court therefore finds that the sentence it imposed on the defendant does not violate his eighth amendment rights.

## III. CONCLUSION

After carefully examining the defendant's contentions, the court finds that (1) it may not dismiss count two of the criminal information as insufficient; (2) a rational jury reasonably could have found the defendant guilty on both counts of the information based on the evidence presented at trial, and therefore judgment of acquittal on either count would be improper; (3) there has not been a miscarriage of justice and the court has not committed prejudicial error and therefore it may not grant the defendant a new trial; and (4) the sentence imposed on the defendant does not violate his eighth amendment rights and the court therefore may not set it aside.

An appropriate order will be entered.

### ORDER

This matter having come before the court on the defendant's post-trial motions to dismiss count II of the criminal information, for judgment of acquittal or in the alternative for a new trial on both counts of the information, and to set aside his sentence; and

The court having considered the submissions of the parties; and

For the reasons set forth in the court's opinion of this date;

IT IS on this 16th day of February, 1989, hereby

ORDERED that

(1) defendant's motion to dismiss count II of the criminal information is DENIED;

(2) defendant's motion pursuant to Fed. R.Crim.P. 29(c) for judgment of acquittal on counts I and II of the criminal information is DENIED;

(3) defendant's motion pursuant to Fed. R.Crim.P. 33 for a new trial on counts I and II of the criminal information is DENIED; and

(4) defendant's motion to set aside his sentence is DENIED.